# ÆTNA LIFE INSURANCE COMPANY v. FLOUR CITY ORNAMENTAL IRON WORKS.[1]

February 14, 1913.

Nos. 17,841—(181).

**Refreshing recollection of witness.**

Entries made by witnesses in a book kept by the plaintiff insurance company, and known as its liability policy register, *held* to constitute sufficient and proper memoranda for use by the witnesses in refreshing their recollection.

**Reformation of policy — evidence.**

Refusal of the trial court to grant reformation of an employer's liability insurance policy, so as to make it fully cover the amount paid by the insurance company upon a judgment against the insured in favor of an injured employee, and thus to defeat the insurance company's claim against the insured for the excess so paid over and above the face of the policy, *held* sustained by the evidence.

**Finding sustained by evidence.**

The trial court's finding as to the amount of indemnity called for by the policy, which had been destroyed by fire, *held* sustained by the evidence.

**Evidence against party's contention.**

The defendant's contention that the plaintiff was precluded from a recovery by its negligent failure to effect a settlement with the defendant's injured employee before suit and judgment on his claim *held* not sustained by the evidence.

**Recovery of excess paid upon judgment.**

The plaintiff insurance company, having paid the full amount of the judgment against the defendant, the insured, in favor of the latter's injured employee, in the mistaken belief that such amount was fully covered by the policy, was entitled to recover from the defendant the excess so paid over and above the amount of indemnity called for by the policy.

Action in the district court for Hennepin county to recover $2,-687.07. The facts and a summary of the pleadings will be found

[1] Reported in 139 N. W. 955.

in the opinion. The case was tried before Steele, J., who made findings in favor of plaintiff and ordered judgment in its favor for $2,558. From an order denying a new trial, defendant appealed. Affirmed.

*A. B. Darelius, M. H. Boutelle* and *N. H. Chase,* for appellant. *Bracelen & Cronin* and *John D. O'Brien,* for respondent.

PHILIP E. BROWN, J.

The complaint, summarized, alleged the plaintiff's corporate existence, and its issuance to the defendant, on March 5, 1906, of a policy of employer's liability insurance, for 36 months from its date, insuring the defendant, upon the conditions therein recited, against liability for accidents or injuries to its employees during the time stated; the plaintiff's maximum liability for any individual injury being fixed at the sum of $1,500. In 1907 Alexander Davidson, one of the defendant's employees, suffered an accidental injury covered by the policy, and brought an action to recover damages therefor against the defendant, which, after being defended by the plaintiff in accordance with the conditions of the policy, resulted in a judgment in favor of the employee for $4,132.72; that through inadvertence and mistake of fact, in that the plaintiff's agents and attorneys believed that the policy provided for the indemnification of the defendant up to the sum of $5,000 in each individual case of injury, the plaintiff paid the judgment in full. Relief was demanded by the plaintiff, on the theory that it was entitled to recover the excess over $1,500 so paid as the result of the mistake.

The defendant's answer admitted the matters recited in the complaint, except the claim of mistake on the part of the plaintiff in paying the judgment, and tendered, in substance, the following issues: (1) That the mistake, if any, made by the plaintiff was one of law, and not of fact; (2) that the plaintiff's payment of the judgment was voluntary, and made without the defendant's knowledge or request, either express or implied; (3) that, when the policy was negotiated, the defendant had applied for, and the plaintiff had accepted its proposition to, and also agreed to, issue a policy stipulating that in the event of each individual injury its liability should

be to the amount of $5,000, but that the policy in fact issued, owing to the mutual mistake of the parties, failed correctly to express their intention in this regard, consequently the defendant was entitled to a decree reforming the instrument in accordance with such intention; (4) "that under the terms of the policy it was provided that the plaintiff should take charge and control of any and all claims thereunder arising, and that the assured should make no settlement of any claim, except upon its own responsibility; that, following the accident out of which the controversy arose, the injured employee had proposed and offered to settle with the defendant in full upon the payment of $350, and defendant had agreed to settle for that sum; that plaintiff's representatives were immediately communicated with and apprised of the matters stated; that defendant was informed by the latter that they had the matter in charge and would attend to it; that plaintiff's representatives in fact procrastinated in the handling and disposition of the matter, although repeatedly urged to take the same up for final disposition; that, after delaying for some time, plaintiff offered said injured employee the sum of $150 in full settlement of all claims against defendant for the injury mentioned; that the offer was declined, and the action, out of which the judgment in controversy grew, followed; that defendant relied upon the assurance of plaintiff that the arrangement made with its injured employee for the settlement of said loss would be attended to, and that the subsequent action, with the resulting judgment, resulted from the negligence of the plaintiff and its failure to exercise that degree of reasonable skill and diligence, in handling said settlement, imposed upon it by the terms of the policy contract and its assurance to defendant as aforesaid, by reason whereof defendant suffered damage to the full amount of any excess of the judgment over and above the amount of indemnity stipulated by the policy's terms." The defendant prayed judgment in accordance with its claims. The reply denied all of the allegations of new matter set out in the answer.

The action was tried to the court without a jury. Findings were made in favor of the plaintiff, to the effect that the allegations of the complaint were true, and, as mixed conclusions of law and fact,

120 M.—30.

that all sums paid by the plaintiff, exceeding the sum of $1,500, were not made by it as a mere volunteer, such excess being paid to the use and benefit of the defendant. The court also found all of the claims recited in the answer to be unfounded. Judgment was ordered for the plaintiff in accordance with its demand. The defendant's application for a new trial was denied, and the defendant appealed.

1. The natural line of inquiry leads us to consider, first, the defendant's claim of the right to a reformation of the insurance contract, for, if its contentions in this regard are well founded, the plaintiff would have no standing. The defendant, while admitting that the policy involved in this action did not, on its face, indemnify it to exceed $1,500 for an injury suffered by one of its employees, insists that the oral contract between the parties, antedating the written one, contemplated an indemnity up to $5,000, and that the policy should be reformed accordingly. The court having found against this contention, the question for our determination is: Is such finding manifestly and palpably contrary to the evidence?

The sufficiency of the evidence to sustain the claim made must be considered in connection with the established rules concerning the reformation of contracts in general, and of insurance contracts in particular, which rules, as stated in Norman v. Kelso Farmers Mutual Fire Ins. Co. 114 Minn. 49, 130 N. W. 13, are to the effect that generally, to entitle one to a reformation, it must appear substantially that the alleged agreement existed, that the written contract failed to express the same, because of mutual mistake, or for other reasons not here material, and that the facts necessary to the reformation must be established by consistent evidence, unequivocally and convincingly leading to the hypothesis sought to be established, a mere preponderance of evidence being insufficient; and while the general rule has been qualified in cases relating to insurance contracts, these, nevertheless, should not easily be disturbed, or their terms materially changed, without cogent proofs of mistake.

In applying these rules to the case in hand, a detailed statement of the proofs would be unprofitable. Stated generally, therefore, the defendant's case under its evidence is as follows: In 1903 it in-

sured all its employees in the plaintiff company, the indemnity fixed by the agreement being in the sum of $5,000 in each case, and to evidence this contract the plaintiff issued to the defendant a so-called "binder," which bound the insurance company for a period of 10 days in accordance with the alleged agreement, or until a policy was delivered. In 1904 and 1905 the insurance was renewed on the same basis, and in 1906, by agreement, there was another renewal for a term of three years. In 1903 and 1904 only one policy was issued, but in 1905 and 1906 the business was covered by two policies. The defendant offered no positive evidence that these policies were for the sum of $5,000 on their face; but its president, who had the business in charge, testified that they were so to the best of his recollection, and that he thought he examined the 1906 policy when he received it, and that it contained a $5,000 provision was his only recollection. In June, 1907, all of the original policies mentioned were destroyed by fire while in the defendant's possession. Thereafter, at the defendant's request, the plaintiff furnished the defendant with duplicates of the 1906 policies. On the trial, no written application for any of the insurance mentioned was produced. Upon the evidence of the matters stated, and the fact that it appeared that the plaintiff actually paid the Davidson judgment on the theory that it was bound in the sum of $5,000, the defendant predicates its claim of error in this regard.

The plaintiff, while conceding that a binder was issued, showing on its face an indemnity in the sum of $5,000, claimed that this was a mere temporary matter, and that the clear understanding was that separate policies were to be issued indemnifying the defendant in the sum of $1,500 as to each workman employed inside of the defendant's shop, and $5,000 as to each workman employed on the outside, and that separate policies were delivered to the defendant in accordance with and embodying this understanding. Employees and ex-employees of the plaintiff testified to the effect that, when the policies came to the plaintiff's Minneapolis office, it was their duty to enter, in a book known as the "liability policy register," from the original policies, the essentials thereof. Over the objection and

exception of the defendant, the court permitted such witnesses to use this book to refresh their recollections, and to testify that in each of the years mentioned two policies were issued to the defendant, which in all respects conformed to the plaintiff's claim in such regard. The defendant contends that it was reversible error to permit these witnesses so to testify, and also that their testimony should not be considered. We cannot so hold.

The policies had been destroyed, and it was material to show the substance of their contents. The entries, having been made by the several witnesses who testified in this regard, constituted a sufficient memorandum. There can be no doubt that, had the original policies been in existence, they would all have been competent evidence to establish the course of the dealings of the parties. Having been destroyed, secondary evidence of their contents was proper; and the witnesses who had actually seen them, and had made entries of their relevant provisions, could properly use such entries as memoranda to refresh recollection. The testimony of one Eddy in this regard was founded upon a somewhat narrow foundation; but the error, if any, is insufficient to warrant our disregarding his testimony, much less a reversal. Nor have we overlooked the defendant's point that the plaintiff should have produced the defendant's original applications for insurance; but we are unable to find in the record any evidence establishing that there were any applications in the sense in which the defendant uses this term. Moreover, if the defendant, to aid in establishing its affirmative claim, desired to use the alleged applications, notice to produce should have been given. We hold that the court's determination concerning reformation cannot be disturbed.

2. It appeared that on November 7, 1907, the defendant's employee Davidson was injured, while working inside the defendant's shop, by the bursting of an emery wheel. The defendant notified the plaintiff of the accident, of the breaking of the employee's leg thereby, and that the cause was unknown, except as stated; the injured man having been about 45 feet from the wheel when it burst. After being in the hospital about eight weeks, Davidson

proposed to the defendant to settle his claim for damages for $350, of which fact the defendant advised the plaintiff, who thereupon stated that the matter would be attended to. Some two or three days later, Davidson advised the defendant that no one had called to see him concerning his claim. Whereupon the defendant advised the plaintiff of such fact, and that they must attend to the case at once, to which the plaintiff replied that it would make arrangements to see Davidson immediately. Some two or three days later a similar occurrence took place, and a few days thereafter an agent of the plaintiff attempted to settle with Davidson, refusing, however, to agree on the basis theretofore suggested, and offering him only $150. Davidson then became angry and refused to settle for less than $2,000. The negotiations for a settlement were thereupon discontinued, and the Davidson suit followed.

It is upon this state of facts that the defendant predicates its claim that the plaintiff was negligent, and that it is in no event entitled to a recovery in this action. This contention, however, cannot be sustained. Its basis must necessarily be that the plaintiff failed to perform some duty owing by it to the defendant, to its damage. Aside from what has been stated, there was no showing of how the accident occurred, or that a prudent person could have ascertained, prior to the verdict, that any liability had been incurred by the defendant on account of such accident, or that any state of facts existed which created a liability in favor of the injured employee, or that a prudent person could have anticipated that the employee would in any event recover a verdict for any sum in the action which ensued. Manifestly, no finding of negligence could be sustained under the circumstances.

3. We come, now, to the plaintiff's right to recover, and we do not think this question requires extended treatment. That the plaintiff paid out over $2,500 to satisfy the Davidson judgment, which the defendant would have been required to pay, if the plaintiff had not, is conceded, if the plaintiff's contention as to the amount of the policy here involved is, as we have already held, to be sustained, and we are satisfied that this payment was made

through a mistake of fact. The gist of the defendant's claim of nonliability for the amount so paid, not before disposed of, is that the payment was voluntarily made, without the knowledge of the defendant, or its request, either express or implied.

In Emmert v. Thompson, 49 Minn. 386, 391, 52 N. W. 31, 32 Am. St. 566, the principle governing this case was thus stated by Mr. Justice Collins:

"It has been well said that the doctrine of subrogation has been steadily growing and expanding in importance, and becoming more general in its application to various subjects and classes of persons. It is not founded upon contract, but is the creation of equity, is enforced solely for accomplishing the ends of substantial justice, and, being administered upon equitable principles, it is only when an applicant has an equity to invoke, and where innocent persons will not be injured, that a court can interfere. It is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it, and is not dependent upon contract, privity, or strict suretyship."

See, also, the application of the same principle in First Nat. Bank of Goodhue v. Village of Goodhue, supra, page 362, 139 N. W. 599. The action in that case was to recover money received and used for a legitimate purpose by the defendant therein, a municipality, under a contract invalid in part, because certain legal requirements had not been complied with, but which was not beyond the power of the corporation to make. The court said: "The doctrines of assumpsit are applicable to municipalities as well as to natural persons, and the action may be maintained on any of the common counts, not from any contract entered into on the subject, but from the general obligation to do justice, which binds all persons natural or artificial."

See, also, in this connection, 3 Dunnell, Minn. Dig. §§ 9036, 9041. The plaintiff was not an intermeddler, and under the principles above announced we hold that it had the right to recover.

Order affirmed.