# EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES v. IRWIN BACHRACH.

120 N. W. (2d) 327.

March 8, 1963—No. 38,731.

*Schermer & Gensler, Edward H. Borkon,* and *Jerome E. Kline,* for appellant.

*Briggs & Morgan, A. Laurence Davis,* and *Burt E. Swanson,* for respondent.

SHERAN, JUSTICE.

This appeal is from a judgment of the district court entered pursuant to an order granting plaintiff's motion for summary judgment.

The issue for decision is whether the record presented for review sustains the conclusion of the trial court that the pleadings and admissions on file herein show that there is no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law.

The complaint alleges: That on or about December 16, 1959, defendant submitted to plaintiff a claim under a group policy of health and accident insurance issued by plaintiff, the Equitable Life Assurance Society of the United States (hereinafter called the society), for nonoccupational hospital major medical and accident and health benefits, representing that said claim was not based on any illness or injury arising out of or during the course of any employment; that plaintiff, relying upon said representation and supposing that defendant's claim was not based upon any illness or injury arising out of or during the course of any employment, paid to defendant or on his behalf, pursuant to said claim, the sum of $1,014.93; that thereafter, defendant filed a claim for workmen's compensation benefits covering the same disability, alleging therein that the injury, a myocardial infarct sustained on October 26, 1959, did arise out of and in the course of his employment, which claim was sustained by the Industrial Commission.

Defendant's answer admitted that he obtained disability and medical benefits under a group policy carried on his behalf by his employer (Montgomery Ward & Company, Inc.) with the plaintiff; that in adversary proceedings before the Industrial Commission he took the position that the disability involved arose out of and in the course of his employment; and that his claim was sustained notwith-

standing the employer's contention that the disability was nonoccupational. Defendant also alleged that he was required to incur expense and attorney's fees in the workmen's compensation proceeding. The answer, by qualified general denial, places in issue the allegation of the plaintiff that it relied upon the alleged representation made by defendant in making the payments previously mentioned.

By virtue of defendant's failure to respond to plaintiff's request for admissions, the following facts are established for present purposes: The sum of $1,014.93 was paid by plaintiff to defendant or in his behalf as benefits *pursuant to a claim* submitted by defendant under group policy No. 2417 issued by the society. In submitting the claim *defendant represented that it was not based on any illness or injury arising out of or during the coure of his employment.* The policy involved contained the following provisions:

"DISABILITY BENEFITS.

"Upon receipt of due proof that any employee * * * shall have become wholly and continuously disabled as a result of (a) *nonoccupational accidental bodily injuries or* (b) *non-occupational sickness,* * * * the Society will * * * make payments to such employee * * * for the period during which the employee remains disabled, * * *."

"LIMITATIONS APPLICABLE TO DISABILITY BENEFITS.

"No benefits shall be payable under the provisions hereof entitled 'Disability Benefits'

* * * * *

"(c) for disability due to *accidental bodily injuries arising out of and in the course of the employee's employment,*

"(d) for disability due to occupational disease; for purposes of this policy the term 'occupational disease' shall mean *a disease for which the employee* with regard to whom a claim is submitted, *is entitled to benefits under the applicable Workmen's Compensation Law* * * *."

"HOSPITAL CONFINEMENT BENEFITS.

"Upon receipt of due proof that any employee * * * shall have been confined to a legally constituted and operated hospital by rea-

son of *non-occupational accidental bodily injury or non-occupational sickness*,[1] * * * the Society will pay to such employee, subject to the provisions of this policy and to the limitations applicable to this provision, the following benefits:"

"LIMITATIONS APPLICABLE TO HOSPITAL CONFINEMENT BENEFITS.

"No payment shall be made under the provision hereof entitled 'Hospital Confinement Benefits'

\* \* \* \* \*

"3. for hospital confinement, or for charges incurred during such confinement

\* \* \* \* \*

"(b) *due to sickness resulting from occupational disease; for purposes of this policy 'occupational disease' shall mean a disease for which the employee* with regard to whom a claim is submitted, *is entitled to benefits under the applicable Workmen's Compensation Law* * * *, or

"(c) due to accidental bodily injuries *arising out of and in the course of an employee's employment.*" (Italics supplied.)

Defendant's claim petition, dated June 6, 1960, filed with the Industrial Commission states that he sustained on October 26, 1959, "a personal injury or occupational disease at or near St. Paul, Minnesota," and that said injury arose out of and in the course of his employment, the nature of said injury being a "[h]eart condition." Upon hearing before Referee Robert R. Faricy it was found as a fact that defendant sustained a personal injury which arose out of and in the course of his employment, and he was awarded compensation for a period of temporary total disability, for another period of temporary partial disability, and thereafter as disability should warrant. The ref-

---

[1] " '[O]ccupational' is defined as 'of or pertaining to an occupation, trade or work'. Nonoccupational, of course, means 'not of or pertaining to an occupation, trade or work'." Morgan v. Equitable Life Assur. Soc. (La. App.) 22 So. (2d) 595, 597. The object of policies of this type is to complement the protection afforded employees by workmen's compensation acts. Maltais v. Equitable Life Assur. Soc. 93 N. H. 237, 40 A. (2d) 837.

eree directed that the sum of $421.30 which had been paid to the employee pursuant to the group policy of health and accident insurance should be taken as a credit by the employer against his obligation to make payment pursuant to the Workmen's Compensation Act and that the employer's liability for hospital and medical bills incurred for the care and treatment of defendant should be only the difference between the amount paid under the terms of the group policy and the actual amount incurred for the hospital and medical services. Attorney's fees in the amount of 25 percent of the compensation awarded were allowed to the employee's attorney. In a memorandum accompanying the findings, Mr. Faricy noted that the case involved an attack of coronary insufficiency sustained while the employee, in unloading a cart of merchandise, was tugging at a bundle that was stuck, and that it was the opinion of a doctor testifying in behalf of employee that the stress and strain incident to the dislodging of the package produced the coronary insufficiency.

Upon appeal to the Industrial Commission the findings of the referee were affirmed and adopted, but the determination that credit should be given on account of payments made pursuant to the health and accident policy issued by the society was rejected. Commissioner Lewis J. Intihar, in the opinion of the commission, stated:

"* * * Although some conflict in medical testimony did exist, Dr. Karlen and Dr. Mazzitello were of the opinion there was a direct and causal connection between the exertion of removing the package and the occurrence of the myocardial infarction the employe sustained by the strain exerted in jerking the wedged package loose, from the awkward position the employe was in at the time the incident occurred. We find the evidence sustains the referee's decision that the injury arose out of and in the scope of his employment."

Credit for payments made pursuant to the terms of the policy of insurance was denied by the commission upon the ground that this was beyond the jurisdiction of the commission. Thereafter the employee received payment of all medical, hospital, and drug expense which he had incurred together with the amounts awarded as compensation.

■ In determining the propriety of the order granting summary

judgment we are guided by Rule 56.03, Rules of Civil Procedure, which provides in part:

"* * * Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law."

From this review of the facts it is clear that the claim for benefits under the group policy was submitted by the defendant to the society upon the factual theory that illness or injury did not arise out of or during the course of defendant's employment. It is also clear that coverages afforded by the group policy were not payable unless the disability was occasioned and the hospital expense incurred by reason of *nonoccupational* accidental bodily injury or *nonoccupational* sickness. In addition, payment of benefits for disability and hospital confinement due to accidental bodily injury arising out of and in the course of the employee's employment or due to occupational disease for which the employee was entitled to benefits under the applicable workmen's compensation law is specifically precluded by the policy terms.

As stated in Morgan v. Equitable Life Assur. Soc. (La. App.) 22 So. (2d) 595, 598, quoted with approval in Strickland v. Equitable Life Assur. Soc. (M. D. Ala.) 172 F. Supp. 729, 731:

"* * * The policy clearly contemplates that so long as an employee is in the discharge of the duties of his occupation or is engaged in some activity necessarily incidental thereto, in the furtherance of the employer's business, the policy provisions would not apply."

Defendant considers it significant and urges that the record in this case fails to establish that the heart damage sustained by defendant was "caused by accident." Gillette v. Harold, Inc. 257 Minn. 313, 101 N. W. (2d) 200, does note that the 1953 revision of the Workmen's Compensation Act eliminated the words "caused by accident" from Minn. St. 1949, § 176.02. The act now provides that an employer is required to pay compensation "in every case of personal injury or death of his employee arising out of and in the course of em-

ployment * * *." Minn. St. 176.021, subd. 1. Section 176.011, subd. 16, defines "personal injury" as "injury arising out of and in the course of employment and includes personal injury caused by occupational disease; * * *."

Defendant argues that since the "limitations" appearing in the group policy *exclude* only disability and confinement due to *accidental* bodily injury arising out of and in the course of employee's employment, the "limitations" would have no application if the disability and confinement resulted from causes which were not accidental. We believe it unnecessary to decide whether the injury sustained by defendant was accidental. The policy "limitations" aside, there was no coverage afforded under the group policy in the first instance *unless* the disability or confinement resulted from *nonoccupational bodily injury or nonoccupational sickness.* In Employers Cas. Co. v. Patterson (Tex. Civ. App.) 344 S. W. (2d) 199, 202, the Texas Court of Civil Appeals, after reviewing the authorities in point,[2] stated:

"* * * Without exception, the cases cited above were first concerned with whether or not the person involved was engaged in the course of his employment at the time the injury was suffered. Once this fact was determined in the affirmative, the court proceeded to find the benefits were excluded under the policy similar to the one before us."

The same situation applies here. Whether "caused by accident" or resulting from personal injury not so caused, the disability and confinement were occasioned by defendant's occupation and were not "nonoccupational." It follows that there was no obligation on the part of the insurer to make payments under the group policy.

It is our opinion, therefore, that the motion for summary judgment was properly granted because the undisputed facts show that defendant was unjustly enriched when he received payment made by the society on the mistaken premise that the claim had a "non-occupational" basis when it clearly appears that the disability and confinement were

---

[2]Metropolitan Life Ins. Co. v. Wilson (Tex. Civ. App.) 102 S. W. (2d) 454; Gage v. Connecticut General Life Ins. Co. (Mo. App.) 273 S. W. (2d) 761, 47 A. L. R. (2d) 1234; Maltais v. Equitable Life Assur. Soc. 93 N. H. 237, 40 A. (2d) 837.

in fact occupational. This conclusion has support in the decision of this court in Aetna Life Ins. Co. v. Flour City Ornamental Iron Works, 120 Minn. 463, 139 N. W. 955, where it was held that an insurer was entitled to recover an amount paid by mistake in excess of the maximum liability fixed by the policy of insurance.[3]

Defendant contends, however, that the representation that the disability and confinement were nonoccupational is a conclusion of law and that an insurer which has paid money under a contract of insurance because of a mistake of law is not entitled to restitution. The mistake involved here is significant only as it relates to the question of whether defendant was engaged in the duties of his occupation at the time of the heart attack. In our opinion, as applied to the record before us, this misapprehension should be treated as a mistake of fact. In determining whether the defendant has been unjustly enriched, it seems of little practical importance what words are applied to describe the insurer's belief that it was paying money on account of and pursuant to a claim for nonoccupational disability and confinement. See, 5 Williston, Contracts (Rev. ed.) § 1582; Restatement, Restitution, Topic 3, p. 179.

■ There are circumstances, however, where money has been paid by mistake and full restitution is nevertheless denied. The right of restitution is terminated or diminished if, after the receipt of the benefit, circumstances have so changed that it would be inequitable to require full restitution, Restatement, Restitution, §§ 69, 59, *comment a*, and 142. See, Grand Lodge A. O. U. W. v. Towne, 136 Minn. 72, 161 N. W. 403, L. R. A. 1917E, 344.

In this connection, we consider defendant's claim that he is entitled to set off as a necessary expense the amounts paid or incurred by him in asserting his claim before the Industrial Commission. If this expense was caused by the society's payment to defendant, such a

---

[3]For present purposes it may be conceded that plaintiff was not entitled to summary judgment upon the theory that payment was made in reliance upon fraudulent representation made by defendant. The burden was upon the insurer to prove that it acted in reliance on the truthfulness of the representation if relief is to be afforded on the theory of fraud. Gaertner v. Rees, 259 Minn. 299, 107 N. W. (2d) 365.

set-off would be proper. Here, however, the obligations so paid or incurred would have been the same if the society had rejected defendant's claims for benefits under the group policy. Proceedings before the commission were not instituted because of the erroneous payment but, rather, in spite of it. The case is not like Hayward v. State Farm Mutual Auto Ins. Co. 212 Minn. 500, 4 N. W. (2d) 316, 140 A. L. R. 1236, where an insurer, subrogated to the right of recovery of its insured to the extent of a payment made pursuant to the collision coverage afforded by its policy, was held liable for its proportionate share of the expense incurred in making recovery from a third party whose negligence caused the loss. In such case, the insurer is required to share the expense because a loss which it was obligated to pay by its contract has been recouped to its benefit. In the case before us, the right of the plaintiff to restitution hinges on the fact that it has made a payment which it *was not obligated* to pay by its contract. Therefore, it acquired no interest in the recovery made under the Workmen's Compensation Act.

■ Except for the cost of asserting the workmen's compensation claim, defendant presented nothing to the trial court upon which a defense of hardship could be based. We conclude, therefore, that the motion for summary judgment was properly granted.

Affirmed.