**ADMIRAL INSURANCE COMPANY,**
**Plaintiff,**

v.

**AMERICAN NATIONAL SAVINGS**
**BANK, F.S.B., Defendant.**

**Civil No. H–95–1151.**

United States District Court,
D. Maryland.

Feb. 14, 1996.

---

**5.** Defendant disputes that the procedures relied upon by plaintiff even applied to those in plaintiff's position.

Valerie L. Tetro, Washington, DC, for plaintiff.

Brian L. Wallace, Baltimore, Maryland, for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, an insurance company has sued its insured seeking to recover amounts claimed to have been erroneously paid under a policy issued by the insurer. Plaintiff Admiral Insurance Company ("Admiral") issued a master insurance policy to defendant American National Savings Bank, F.S.B. (the "Bank"). The Bank suffered a loss which it claimed was covered by the policy, and the Bank was later paid $158,000 by Admiral. Claiming that this amount was erroneously paid, plaintiff Admiral has filed a four-count complaint seeking recovery of the $158,000 and other damages.

Discovery has been completed in the case, and the parties have filed cross-motions for summary judgment. In support of those motions, both the plaintiff and the defendant have submitted a memorandum of law, deposition excerpts and other exhibits. A hearing on the pending motions has been held in open Court. For the reasons to be stated herein, plaintiff's motion for summary judgment will be granted as to Count II, and the claims asserted by plaintiff in Counts I, III, and IV will be dismissed without prejudice. Defendant's motion for summary judgment will be denied.

I

### Background Facts

The essential facts are not disputed, and both sides have indicated that the issues in this case may be resolved by the Court by way of the pending motions for summary judgment. The policy which was issued by Admiral to the Bank provided coverage for the period from July 1, 1993 to July 1, 1994. The policy provided fire, lightning and other coverage to the Bank during that period. As to residential property owned by the Bank, the policy provided "all risk" coverage, sub-

ject to certain exclusions. As to commercial property owned by the Bank, the policy covered against loss due to specific named perils, and also subject to certain exclusions. "Residential property" was defined as a building designed principally for dwelling purposes by not more than four families. "Commercial property" was defined as "a building, not residential."

· On October 23, 1993, the Bank, as a result of foreclosure proceedings, became the owner of a three-story apartment building located at 2306 Mount Royal Avenue in Baltimore, Maryland. The building contained twelve apartment units. Coverage of the Mount Royal Avenue property was added to the policy which Admiral had issued to the Bank.

On January 25, 1994, the Bank reported to an agent of Admiral that the Mount Royal Avenue property had suffered water damage caused by freezing pipes. The Bank submitted a loss notice which listed the property as "residential occupied." Admiral contacted an insurance adjusting company, and on January 25, 1994, Adjuster Daniel Eidman inspected the property for approximately one hour. Eidman's initial estimate of the loss was $125,000. Believing that this estimate was too low, the Bank retained the firm of Goodman, Gable & Gould to assist in the adjustment of the claim. On January 26, 1994, Eidman and a Goodman representative inspected the property for some three hours. Eidman himself made a later inspection on January 28, 1994.

In a report submitted to Admiral, Eidman described the building as a "three-story, brick, approved roof building ... tenant occupied as twelve, one-family units." On February 10, 1994, Admiral issued to the Bank an advance payment of $20,000 for the loss. After it had received further reports from Eidman, Admiral later paid the Bank an additional $138,000 representing the balance due on the Bank's claim. The Bank then paid Goodman a 10% fee, or $15,800, as the agreed compensation for its assistance in negotiating the claim. At the time that these payments were made to the Bank, neither Admiral nor the Bank was aware that the Mount Royal Avenue property should have been classified as "commercial" rather than "residential," and that therefore the loss was not covered by the policy.

Some months later, the Bank submitted a new reporting form requesting that the classification of the Mount Royal Avenue property be changed from "residential occupied" to "commercial," retroactive to October 25, 1993. The parties now agree that the Mount Royal Avenue property should at all times have been classified as "commercial" property and that the provisions of the Admiral policy accordingly provided no coverage for the loss suffered by the Bank on January 25, 1994.

In December of 1994, Admiral made a claim against the Bank for repayment of the $158,000 which it had erroneously paid for the loss. The Bank declined to repay any amount, and Admiral thereafter instituted this civil action in this Court. Diversity jurisdiction exists.

## II

### The Claims

The complaint contains four counts. In Count I, Admiral alleges that the Bank breached the insurance contract and caused Admiral to sustain damages of $158,000. Count II also alleges a breach of contract and seeks restitution in the amount of $158,000. In Count III, Admiral asserts a claim of negligence, and Count IV is based on a claim of negligent misrepresentation.

In their memoranda, the parties have spent little time discussing the claims asserted by Admiral in Counts I, III and IV. The principal dispute in this case is whether plaintiff Admiral is entitled under a theory of restitution to recover from the Bank the $158,000 erroneously paid under the policy. Plaintiff has agreed that if it is entitled to a recovery under Count II, the other three counts may be dismissed without prejudice.

## III

### Discussion

█ The parties agree that the basic principle of law to be applied to plaintiff's claim of restitution asserted in Count II is "that

monies paid under a mistake of fact may be recovered by the payor, but that monies paid under a mistake of law cannot be recovered." *Young v. Cities Serv. Oil Co.*, 33 Md.App. 315, 321, 364 A.2d 603 (1976) (citing numerous cases). The essential issue in this case is therefore whether Admiral paid money to the Bank under a mistake of law or under a mistake of fact. Admiral contends that it committed a mistake of fact because it erroneously believed that the Mount Royal Avenue property was residential. According to Admiral, had it realized that the Mount Royal Avenue property was not residential, it would never have made payments to the Bank.

On the other hand, the Bank contends that Admiral committed a mistake of law because it misinterpreted its legal obligations under its insurance policy. According to the Bank, Admiral incorrectly believed that it was legally bound to pay the Bank's claim and therefore committed a mistake of law.

No Maryland case has discussed whether an insurer is entitled to restitution of payments made under a policy when no coverage is later found to exist under the policy. A number of Maryland cases have addressed attempts to recover taxes which were voluntarily and erroneously paid. These cases have uniformly concluded that the voluntary payment of taxes is a mistake of law and that such payment cannot be recovered in the absence of statutory authorization for a refund. *See, e.g., Washington Suburban Sanitary Comm'n v. C.I. Mitchell and Best Co.*, 303 Md. 544, 495 A.2d 30 (1985); *Rapley v. Montgomery County, Md.*, 261 Md. 98, 274 A.2d 124 (1971). These cases are distinguishable on their facts. The payment of taxes is based on an interpretation of a taxpayer's legal obligations under a statutory scheme. In contrast, the overwhelming weight of persuasive authority dealing with private insurance contracts indicates that the erroneous payment by an insurer of amounts claimed under an insurance policy constitutes a mistake of fact which permits recovery of the amounts paid under a theory of restitution.

In *Chalupa v. Hartford Fire Insurance Company*, 217 Neb. 662, 350 N.W.2d 541 (1984), the Nebraska Supreme Court considered a dispute similar to the one presented in this case. In *Chalupa*, the policy at issue covered approximately 27 buildings situated at four different locations. One of the covered buildings suffered water damage due to a ruptured pipe, and the insurer paid the full amount of the loss claimed. Almost three months later, the insurer advised its insured that the dwelling in which the water damage occurred was not covered for this particular type of peril. The insurer requested that its payment be returned, but the insured refused. *Id.* 350 N.W.2d at 543. The trial court determined that the damaged dwelling was not insured for harm caused by a ruptured water pipe, and ordered the insured to repay the amount received. *Id.* On appeal, the Nebraska Supreme Court first restated the rule that "[a]n insurer who has made a payment under a mistake of fact that the terms of an insurance contract require such payment is entitled to restitution...." *Id.* at 544. The Court then concluded that there was "no doubt" that the dwelling at issue was not covered for harm due to water damage and that the insurer's payment to the insured was due to a mistake of fact. *Id.* The insured therefore was required to repay in full the amount received from his insurer.

A similarly illustrative case is *Equitable Life Assurance Society v. Bachrach*, 265 Minn. 83, 120 N.W.2d 327 (1963). In that case, the insured represented to his insurer that he suffered from a non-occupational disability, and the insurer paid him benefits under the policy. The insured then filed for workers' compensation benefits covering the same disability, alleging that the injury arose out of his occupation. His claim was sustained, and he received workers' compensation benefits. *Id.* 120 N.W.2d at 329. The insurer then filed suit to recover the benefits it had paid to the insured because the insurance policy in question did not provide coverage for occupational injuries. The insured argued that his representation that the disability and confinement were non-occupational was a conclusion of law, that the insurer had therefore paid money because of a mistake of law, and that the insurer was not entitled to restitution. *Id.* at 332. The

Minnesota Supreme Court disagreed, concluding that the mistake at issue was significant only as it related to the question of whether the insured was engaged in the duties of his occupation. According to the Court, the insurer's misapprehension was a mistake of fact, and restitution by the insured was proper. *Id.* at 332–33. Numerous other cases have concluded that an erroneous payment under an insurance policy should be considered a mistake of fact rather than a mistake of law. *See, e.g., Simpson v. National Cas. Co.,* 851 S.W.2d 665 (Mo.Ct.App. 1993); *Mid–Century Ins. Co. v. Brown,* 33 Wash.App. 291, 654 P.2d 716 (1982); *Singer v. St. Paul Mercury Ins. Co.,* 478 S.W.2d 579 (Tex.Civ.App.1972).

The United States Court of Appeals for the Seventh Circuit has questioned the necessity of even categorizing a mistake as one of fact or one of law. In *Harnischfeger Corporation v. Harbor Insurance Company,* 927 F.2d 974 (7th Cir.) (Easterbrook, J.), *cert. denied,* 502 U.S. 864, 112 S.Ct. 189, 116 L.Ed.2d 150 (1991), the Court concluded that under Wisconsin law restitution was a proper remedy when an excess insurer tendered coverage before the time required by its policy. The Court noted that, prior to making any payments, the excess insurer had to examine the terms of its policy, the fact concerning the insured's claim, and state law. In this type of situation, "[s]uch an activity cannot be sorted neatly into bins marked 'fact' and 'law.'" *Id.* at 977. The Court also reasoned that if the excess insurer could not recover its overpayments, then in the future it would resolve all close cases against coverage. In the opinion of the Court, "insureds would prefer to have their insurers take over immediately ... and settle accounts later...." *Id.* An absolute bar against restitution was deemed under such circumstances to be improper. *Id.* at 978; *see also Hartford Accident & Indem. Co. v. Chicago Housing Auth.,* 12 F.3d 92, 96–97 (7th Cir.1993) (Illinois law).

Applying these principles to the facts of record here, this Court concludes that a Maryland court deciding this issue would determine under these facts that Admiral committed a mistake of fact. Admiral made payments to the Bank under the erroneous impression that the Mount Royal Avenue property was a residential property. The mistake made by the insurer in this case is similar to the mistake made in *Chalupa,* where the damaged dwelling was generally covered under the insurance policy but not covered for the specific damage that occurred. In this case, the Mount Royal Avenue property was generally covered under the Admiral policy, but should have been properly listed as a commercial property with no coverage for the specific loss claimed. The determinative fact here was whether or not the Mount Royal Avenue property was "residential" under the policy's definition, just as in *Bachrach* the determinative fact was whether or not injury was "occupational" as the policy defined that term. Moreover, as explained by the Seventh Circuit, sound policy reasons support the conclusion that an insurance company should not be barred from seeking restitution under circumstances like those present in this case.

In opposing Admiral's claim for restitution asserted in Count II of the complaint, the Bank relies on two cases in which courts refused to grant restitution to an insurance company. *See The Hartford v. Doubler,* 105 Ill.App.3d 999, 61 Ill.Dec. 592, 434 N.E.2d 1189 (1982); *National Fire Ins. Co. of Hartford v. Butler,* 260 Iowa 1159, 152 N.W.2d 271 (1967). The facts of these cases are distinguishable.

In *Doubler,* the farm owners' policy at issue contained a coverage exclusion for loss of livestock while in a public sale barn. On two separate occasions, steers belonging to the insured were stolen from a public sale barn, and on both occasions, the insured informed the insurer that the loss had occurred at a public sale barn. *Id.* 61 Ill.Dec. at 593, 434 N.E.2d at 1190. The insurer timely paid both claims, but over a year later filed suit for restitution. The Court concluded that the payments had been made voluntarily and with full knowledge of the circumstances surrounding the losses, and therefore that there had been no mistake of fact. *Id.* 61 Ill.Dec. at 594, 434 N.E.2d at 1191. The Court specifically noted that the insured

"neither withheld information nor distorted the facts presented to the [insurer]." Under these circumstances, the Court concluded that any policy provisions exempting coverage had been waived. *Id.* 61 Ill.Dec. at 595, 434 N.E.2d at 1192.

In *Butler,* the insurer, through its adjuster, had concluded that a leak of ammonia gas constituted an "explosion" within the terms of the policy at issue. There was no claim of fraud or misrepresentation of the facts surrounding the accident, and the trial court concluded on the evidence presented that the insurer had not sustained its burden of proof that there was any mistake, either of fact or of law. The appellate court affirmed, noting also that it was not at all clear that the "rupture of ammonia pipes was not intended to be included in the policy...." *Id.* 152 N.W.2d at 274.

The Bank's reliance on *Doubler* and *Butler* is misplaced. In *Doubler,* the insureds made no misrepresentations or omissions concerning where the loss occurred, and the insurance company on its own determined that there was coverage. In this case, the Bank affirmatively misrepresented the nature of the property as residential when it added the Mount Royal Avenue property to the policy and when it filed its proof of loss. Although the misrepresentations may have been made innocently, they nonetheless were a contributing cause of the erroneous payments made by Admiral. In *Butler,* the Court determined that the insurance company had not proved that it had made any mistake, and that the ammonia gas leak might have indeed constituted an explosion under the terms of the policy. In the present case, however, it has been agreed that Admiral mistakenly made the insurance payments. The great weight of persuasive case law indicates that the Bank's error in the present case constitutes a mistake of fact and not a mistake of law.

The Court is further satisfied that restitution is not precluded even though Admiral may have been in possession of facts that would have allowed it to determine that the Mount Royal Avenue property was improperly classified. The Bank relies upon *Restatement of Restitution* § 45, which states that, in general, "a person who, induced thereto solely by a mistake of law, has conferred a benefit upon another to satisfy in whole or in part an honest claim of the other to the performance given, is not entitled to restitution." Specifically, the Bank argues that Illustration 2 of § 45 applies to this case:

A insures his ship with the B insurance company and innocently fails to reveal facts, as the result of which the insurance policy creates no liability on the part of the insurance company. Upon the happening of the loss, B, now with full knowledge of the facts, pays A, both A and B mistakenly believing that B is liable upon the policy. B is not entitled to restitution.

The Bank contends that, although the Mount Royal Avenue property was not covered for the loss claimed, Admiral was in possession of "full knowledge of the facts" when it made the payments. On the record here, this Court does not agree that § 45 bars a recovery by Admiral under a theory of restitution.

The Seventh Circuit in *Harnischfeger* specifically addressed the Restatement provision relied upon by the Bank. The Court therein questioned how § 18 of the Restatement allows restitution following a payment made in the mistaken belief that a contract requires payment, yet § 45, illustration 2, disallows restitution under the same circumstances. *Harnischfeger,* 927 F.2d at 977. The result in § 45, illustration 2, is reached ostensibly because there is a mistake of law, yet there is no clear explanation of why this would not be a mistake of fact. The Seventh Circuit, as noted hereinabove, did not dwell on the distinction between a mistake of fact and a mistake of law, but focused instead on the general policy supporting restitution under circumstances similar to those in this case. *Id.* at 977–78. Applying these principles here, the Court is satisfied that § 45, illustration 2, provides little guidance in resolving the dispute in this case.

Moreover, the alleged negligence of Admiral in not realizing that the Mount Royal Avenue property was incorrectly classified is not determinative of its right to restitution. *Restatement of Restitution* § 59 indicates that one who has conferred a benefit upon

another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to lack of care. Thus, even if Admiral were negligent in not realizing that the Mount Royal Avenue property should have been classified "commercial" rather than "residential," that negligence alone would not require this Court to deny restitution.

Accordingly, the Court has concluded that a Maryland state court would determine that Admiral committed a mistake of fact when it paid $158,000 to the Bank.

■ The Bank has further argued that equitable considerations must defeat Admiral's right to restitution, even though payment was made as a result of a mistake of fact. Restitution may be denied if the recipient has changed its position to such an extent that repayment would be inequitable. *Restatement of Restitution* § 142. Change of circumstances is an affirmative defense, and the recipient bears the burden of proving that restitution would be inequitable. *Id.* comment g. Moreover, this defense is available only if the conduct of the recipient was not tortious and if the recipient was no more at fault for its receipt of the payment than was the payor. *Id.*

■ Procedurally, the Bank is barred from relying on the defense of change of circumstances. The Bank has failed to plead reliance or change of circumstances as an affirmative defense in its answer. This failure precludes the Bank from presenting the defense of change of circumstances. *See* 5 Wright & Miller, *Federal Practice and Procedure,* § 1278.

■ Insofar as the merits are concerned, the Court concludes in any event that the Bank has not met its burden of proving that it has undergone such a significant change of circumstances as to make restitution inequitable. The Bank contends that in two ways it changed its position to such an extent that restitution in this case would be inequitable. First, the Bank paid 10% of the proceeds, or $15,800, to Goodman for its assistance in negotiating settlement of the claim on behalf of the Bank. According to the Bank, this expense would not have been incurred if the claim had not been honored. However, prior to receiving any money at all from Admiral, the Bank retained Goodman and agreed to pay a 10% commission. Accordingly, the Bank has not given up any substantial right or benefit which it held prior to receiving the payments from Admiral. The Court is satisfied that the Bank did not rely on the payments to its detriment. *See Western Cas. & Sur. Co. v. Kohm,* 638 S.W.2d 798, 801 (Mo. Ct.App.1982).

Second, the Bank contends that if the claim had been denied and the property had been repaired at the Bank's expense, it would have been able to make adjustments regarding the agreement reached with the prior owner of the Mount Royal Avenue property relating to the foreclosure. The Bank states, rather cryptically, that "[h]aving made an agreement with the debtor based upon its belief that the insurance proceeds would allow it to repair the property and dispose of it, Admiral's mistake of law has prevented [the Bank] from taking any actions to protect itself from an increased deficientcy [*sic*] balance." However, the Bank has provided no details concerning any such agreement made with its debtor.

In any event, prior to the occurrence of the water damage, the Bank had signed a contract to sell the Mount Royal Avenue property for $85,000. Therefore, the Bank would have been required to repair the property whether or not Admiral made any payments under the policy. Moreover, the Bank, as landlord of the building, had a duty to its current tenants to repair the damage, and the payments made by Admiral did not cause the Bank to make expenditures it otherwise would not have made. Finally, as discussed hereinabove, the Bank contributed to the mistake committed by Admiral by twice submitting incorrect information to Admiral concerning the classification of the Mount Royal Avenue property.

For these reasons, the Court has concluded that the Bank has not met its burden of proving that it would be inequitable to grant restitution to Admiral of the amounts erroneously paid to the Bank.

## IV

### *Conclusion*

For all the reasons stated, plaintiff Admiral is entitled to summary judgment as to the claim asserted by it in Count II of the complaint. Its motion for summary judgment will be granted, and the Bank's motion for summary judgment will be denied. Counts I, III and IV of the complaint will be dismissed without prejudice.

An appropriate Order will be entered by the Court.