Myles BROOKS, Respondent,

v.

A. M. F., INC., et al., Respondents,

Lynn Gieseke, d.b.a. St. Paul Seamless Surfacing Co., et al., Respondents,

Child's Construction Company, et al., Respondents,

Saxon Bowling Lanes, et al., Respondents,

and

Blue Cross and Blue Shield of Minnesota, intervenor, Relator,

Prudential Insurance Company, intervenor, Relator.

and

Elmer A. HENDRICKSON, Respondent,

v.

CENTRAL STATES INSULATION, INC., et al., Respondents,

and

General American Life Insurance Company, intervenor, Relator.

Nos. 48532, 48547 and 48631.

Supreme Court of Minnesota.

March 30, 1979.

Rehearing Denied May 4, 1979.

Robins Davis & Lyons, Arnold M. Bellis and John G. Brian III, St. Paul, for Blue Cross/Blue Shield of Minnesota.

Van Evera, Mundt, Koskinen, Clure & Andrew and Thomas F. Andrew, Duluth, for Prudential Ins. Co.

Richards, Montgomery, Cobb & Bassford and John M. Degnan, Minneapolis, for General American Life Ins. Co.

Nilva & Frisch and Paul J. Gatto, St. Paul, for Brooks.

Cragg & Bailly and Gary J. Gordon, Minneapolis, for A. M. F., Inc.

Ronald O. W. Ylitalo, St. Paul, for Gieseke.

Johnson Goetteman Anderson & Laverdiere, Edina, for Child's Const. Co.

Jardine, Logan & O'Brien, St. Paul, for Saxon Bowling Lanes.

Oberg & Robbins, Wayzata, for Hendrickson.

Fitch & Johnson, Minneapolis, for Central States Insulation, Inc.

Warren Spannaus, Atty. Gen., Paul G. Zerby, Asst. Atty. Gen., P. Kenneth Kohnstamm, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Public Welfare.

Heard before ROGOSHESKE, KELLY, and YETKA, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

These consolidated certiorari appeals by Blue Cross and Blue Shield of Minnesota, Prudential Insurance Company, and General American Life Insurance Company, health insurance intervenors, require our review of decisions by the Workers' Compensation Court of Appeals denying intervenors' requests for reimbursement of medical expenses paid for employees who settled their workers' compensation claims without intervenors' agreement prior to trial on the merits. At issue is the adequacy of procedures employed by the Workers' Compensation Division and the court of appeals, by which an intervenor who has not been included as a participant in settlement negotiation between the employee and employer-insurer is awarded reimbursement only after it proves that the employee's injuries are work related. For reasons which follow, we hold that the procedures are not adequate and in the cases under review order full reimbursement to intervenors.

In November 1976, employee Myles Brooks filed a claim petition alleging that he had sustained a permanent injury to his wrist in the course of his employment with three named employers. Brooks also filed claims with the Prudential Insurance Company of America and with Blue Cross and Blue Shield of Minnesota to receive benefits under group health insurance policies that expressly excluded coverage of occupational injuries covered by workers' compensation laws. Both Prudential and Blue Cross made payments on the claims: Prudential, after assurance from Brooks' attorney that it would be reimbursed if the Workers' Compensation Division ruled in Brooks' favor, paid medical bills totaling $2,605.90; Blue Cross paid hospital bills totaling $1,425.70.

In February 1977, Blue Cross and Prudential were notified that they had a right to intervene in Brooks' proceeding before the Workers' Compensation Division in order to obtain reimbursement of the medical expenses they had incurred on Brooks' behalf. Blue Cross intervened; Prudential did not intervene at that time, relying on Brooks' assurances that he would protect Prudential's interests. Before the employee's claim (which was calendared for hearing) was tried on the merits, Brooks entered into a written stipulation of settlement with the employers and insurers.

In the stipulation, each of the employers denied primary liability, and Brooks expressly acknowledged that the injury complained of did not arise in the course of his employment. The employers-insurers agreed to pay Brooks $14,750 in full, final, and complete settlement of all claims, separated into $4,000 for his claim for workers' compensation benefits and $10,750 for his

third-party tort claim. In addition, the employers-insurers and third-party tortfeasor made express reference to the benefits Brooks had received from Prudential and Blue Cross and agreed to hold Brooks harmless against any claim of intervention by these group health insurers.

Both Prudential and Blue Cross were excluded from participating in the negotiations for settlement and were notified of them only after the "stipulation for an award" was approved, when the Workers' Compensation Division informed them by service of a copy of "award on stipulation," which included notice that they would be allowed 90 days in which to notify the compensation judge in charge of calendaring contested cases that they were prepared to prove that Brooks' injuries were work related. After the "award on stipulation" had been issued by an assistant commissioner of the Workers' Compensation Division, Prudential made application to intervene.[1] Prudential and Blue Cross then appealed to the Workers' Compensation Court of Appeals, claiming that their interests were not adequately protected by being forced to prove their claim for reimbursement after having been excluded from the settlement negotiations and award proceedings. The court of appeals affirmed the division's approval and award.

*Hendrickson v. Central States Insulation, Inc.,* was consolidated on appeal with *Brooks.* Insofar as relevant here, the facts in *Hendrickson* and *Brooks* are substantially the same. General American Life Insurance Company petitioned to intervene to recover $3,394.55 in medical expenses it had incurred on behalf of employee Elmer Hendrickson, who had filed a claim petition seeking compensation benefits for an alleged work-related heart attack. After intervention by General American but before trial of the employee's claim, the employer-insurer negotiated a settlement and filed a stipulation for an award with the Workers'

Compensation Division. The division approved a lump-sum final settlement and award of $10,000 without a formal hearing. The assistant commissioner's approval order directed that General American's claim for reimbursement be calendared for trial. At a prehearing conference, the compensation judge denied General American's motion for full reimbursement without a trial and again denied the motion when trial commenced. After hearing on the merits, the judge found the heart attack was not work related. General American appealed both the finding of the compensation judge and his denial of intervenor's motions for full reimbursement to the court of appeals, citing *Repo v. Capitol Elev. Co.,* Minn., 252 N.W.2d 248 (1977). That court, one judge dissenting, affirmed the ruling and findings of the compensation judge. Hendrickson differs from Brooks only in that before approval of the settlement the employer-insurer separately attempted but failed to negotiate a settlement with General American for 25 percent reimbursement.

Intervenors, joined by amicus attorney general on behalf of the Department of Public Welfare, argue that when an intervenor is not a party and does not agree to a settlement of the employee's compensation claim, any award of compensation benefits should provide for full reimbursement of the expenses it has incurred on behalf of the employee. The employers-insurers contend, as the court of appeals held, that the procedures now followed of giving notice of the filing of employee's claim, providing the right to intervene, and affording intervenors the option to promptly litigate their claim for reimbursement upon the merits after approval of the settlement provide ample protection to the secondary and contingent interest of an intervenor. They argue that to allow full reimbursement where the intervenor is not a party to the settlement fails to fully recognize that the

---

1. The "chief attorney" for the division objected to the approval of the settlement, asserting that pursuant to the "dictum" in *Repo v. Capitol Elev. Co.,* Minn., 252 N.W.2d 248 (1977), the division "should not approve any settlement that is not agreed to by third parties involved in the matter or in the alternative, does not provide for full reimbursement to such third parties."

employee is the main owner of his claim and must be entitled to unfettered control of its disposition by settlement.[2] Although it must be acknowledged that the precise issue presented is before this court for the first time, we have previously had occasion to consider the protection to be afforded group health insurers in the context of workers' compensation proceedings. While we have doubts that procedures can be formulated which would be agreeable to all parties in interest, the policies underlying our previous decisions determine the resolution of the issue presented.

One of the earliest cases to deal with this problem was *Equitable Life Assur. Soc. v. Bachrach,* 265 Minn. 83, 120 N.W.2d 327 (1963). There the employee, who had suffered a heart attack while at work, received payments of compensation benefits and additional payments from Equitable under a policy excluding coverage of disease or injury arising in the course of employment. Equitable brought an action in district court for reimbursement, which was granted. On appeal, this court affirmed summary judgment for the plaintiff, stating (265 Minn. 89, 120 N.W.2d 332):

> "It is our opinion, therefore, that the motion for summary judgment was properly granted because the undisputed facts show that defendant was unjustly enriched when he received payment made by the society on the mistaken premise that the claim had a 'non-occupational' basis when it clearly appears that the disability and confinement were in fact occupational."

*Bachrach* made clear that once it is established that a sickness or injury is occupational, a health insurer is entitled to reimbursement of payments made to its insured under a policy excluding such claims.

In *Lemmer v. Batzli Elec. Co.,* 267 Minn. 8, 125 N.W.2d 434 (1963), under factually similar circumstances, this court recognized the right of the health insurer (1) to intervene in the workers' compensation proceedings and (2) to be reimbursed out of the proceeds of the award (267 Minn. 19, 125 N.W.2d 441):

> "In the interest of all concerned, therefore, and as a matter of practical administration, the relief sought by relator as intervenor before the commission should not be denied. Granting such relief under the particular circumstances here involved will prevent multiple litigation in the form of a separate suit for reimbursement against the employee. Moreover, an insurer entitled to restitution is more certain of obtaining it if the commission orders the compensation carrier to make reimbursement than if the insurer must go into some other tribunal to enforce its right. Another important consideration may well be that the chance of double recovery by an employee will be eliminated. The insurer against accident and sickness not arising out of employment will also have less reason to withhold payment of benefits until a determination by the commission when he knows that he will be entitled to reimbursement from the compensation insurer if he has made payments under a mistake of fact."

In *Tatro v. Hartmann's Store,* 295 Minn. 282, 204 N.W.2d 125 (1973), the employee settled his workers' compensation claim with his employer and its compensation insurer; the Workers' Compensation Commission (now court of appeals) approved the settlement and entered an award. Thereafter the employee's health insurer petitioned to intervene in order to obtain reimbursement for hospital and medical bills it had paid. The commission denied the petition, and we affirmed, because the award had been entered without a determination of compensability and the employee could have been prejudiced by a subsequent hearing on that issue. In *Tatro,* however, we also expressed concern that the interests of

---

**2.** The employer-insurer in *Hendrickson v. Central States Insulation, Inc.,* also argues that since the stipulation for settlement was to compensate him for disability benefits only, and not for his medical expenses, none of the intervenor's rights were affected by the stipulation and award. As we declared in *Repo v. Capitol Elev. Co.,* Minn., 252 N.W.2d 248, 251 (1977), this argument is clearly illogical and without merit.

the health insurer be adequately protected and, therefore, called for procedures to be instituted to prevent a recurrence of the situation in that case (295 Minn. 286, 204 N.W.2d 128):

"* * * The payments made on employee's behalf by relators [health insurer] were specifically referred to in employee's claim petition. Therefore, all of the parties and the commission were aware that relators might have some interest in the proceeding. Whatever statutory rights relators may have had were nevertheless ignored in the settlement and also ignored by the commission's approval of the settlement. One of the basic principles of workmen's compensation legislation is 'measurably to place upon industry the burden of the economic loss resulting from the deaths and injuries of workmen engaged in industry.' *E. I. Du Pont De Nemours & Co. Inc. v. Frechette*, 161 F.2d 318, 321 (8 Cir. 1947). If private insurers pay medical bills for work-related injuries, the burden is shifted from industry to the subscribers of private health programs.

"It is unfair to place third parties such as relators in a position where they forfeit possible rights provided by law because, through no fault of their own, they are unaware of the pending proceeding."

Following our decision in *Tatro,* procedures were instituted to ensure that interested parties would be notified of their right to intervene.[3] We approved these procedures in the recent case of *Repo v. Capitol Elev. Co.,* Minn., 252 N.W.2d 248 (1977). In *Repo,* the employee settled with his employer-insurer. Thereafter, without disclosing the settlement, the employee collected medical expenses from his health insurer, promising reimbursement in case of a favorable determination or settlement under the Workers' Compensation Act. The Workers' Compensation Division notified the health insurer when the settlement was submitted to the division for approval, and the health insurer intervened. The com-

pensation judge approved the settlement and put the amount of reimbursement claimed by the health insurer into escrow until its claim was determined. The matter was decided in the health insurer's favor, and the sum held in escrow was paid to it.

On appeal, the employee in *Repo* asserted that intervention should not have been permitted because he had settled his claim, as in *Tatro.* However, we approved the procedure for intervention followed by the Workers' Compensation Division and affirmed. In clarifying our decision, we stated (Minn., 252 N.W.2d 251):

"We believe that in any case of doubtful liability the sickness and accident insurer should immediately pay benefits on the assumption that the sickness or injury is covered by its policy, and later seek reimbursement if there is a successful workers' compensation proceeding. Our holding in this and earlier cases fully protects its right to do so. As a practical matter this will generally mean that the sickness and accident insurer will have to be included in any settlement negotiations. This seems fair since its rights are at stake just as are the employee's. *The employee can, of course, choose to settle without the sickness and accident insurer's consent, but the insurer will then be entitled to full reimbursement from the proceeds of the settlement.*" (Italics supplied.)

We did not intend by the italicized sentence a diminished recognition of the employee's ownership of his claim and his right, subject to approval proceedings required by Minn.St. 176.521, to compromise and settle a claim of doubtful liability without the consent of the health insurer. Nor, as the language may arguably be understood, did we intend that if settlement is made without the health insurer's agreement, where it has been given notice of the negotiations for settlement, participates in them and in the proceedings for approval, but adamantly refuses to agree to compromise its claim for full reimbursement or to

---

3. See, Rules, W.C. 17, 18, Rules of Practice, Workers' Compensation Board and the Work-

ers' Compensation Division. 13 M.S.A. c. 176, Appendix.

agree to an approval of the settlement, that the health insurer should nevertheless be entitled to full reimbursement. Rather, consistent with our decisions from *Bachrach* to *Repo,* we intend that where the injured employee petitions for compensation benefits and is granted an award, whether upon stipulation or adjudication, the health insurer-intervenor's right to recover reimbursement of expenses incurred on behalf of employee under a policy excluding claims covered by workers' compensation must be afforded adequate protection.

■ We believe such protection is afforded under the Workers' Compensation Rules of Practice where an employee is awarded benefits after a trial on the merits. However, we do not believe adequate protection was afforded to the intervenors in these cases or that the procedure followed in the settlement of cases of doubtful liability adequately protects the interests of the health insurers. The procedure now followed permits the employer-insurer to settle the employee's claim without any involvement of the intervenor, who is left with the option of litigating work-relatedness or waiving its right to any reimbursement. To be sure, health insurers are fully protected up to the point when they are given notice of the employee's claim and are liberally granted intervention; but to leave an intervenor, who is excluded from participating in settlement negotiations and from the proceedings resulting in approval of a full, final, and complete settlement by the division, with no remedy other than to thereafter undertake the burden of proving that the injury was work related is not the type of protection which strikes a proper balance of the interests of all parties concerned. Accordingly, we hold that an intervenor who is excluded from participating in negotiations resulting in a final settlement and who is not a party to the settlement stipulation should, on principles of equity and public policy, be awarded full reimbursement by the settlement award.

In reaching this conclusion, we have considered the following: We believe it is incongruous to place upon the intervenor the burden of proving that the injury was work related before it can recover reimbursement. Realistically, the employee, who has already received benefits from both the health insurer and workers' compensation, may have little reason to cooperate with the health insurer in proving that his injury was work related. Furthermore, to the extent the employee is reimbursed twice for the same expense, he is unjustly enriched. Similarly, to the extent the employer-insurer reduces the amount it pays the employee in settlement by the amount the health insurer has previously paid on behalf of the employee, the employer-insurer is unjustly enriched. The attempt of the employer-insurer to negotiate a settlement using intervenors' funds as well as their own is especially pointed in *Brooks,* since he recovered compensation benefits after having expressly stipulated that his injury was *not* work related. Finally, where an intervenor fails to exercise its postsettlement right to litigate the employee's claim, the retention of benefits by either the employer-insurer or the employee offends a basic principle of the Workers' Compensation Act to place upon industry the burden of economic loss resulting from work-related injuries or death. No legitimate reasons occur to us why an intervenor should not be included as a participant in the settlement negotiations or award proceedings. Where the reimbursement sought in relationship to the offered settlement is not substantial, as is the usual case, we are told, it is not economically feasible for an intervenor to make an adequate investigation to permit a fair appraisal of the strength or weakness of the employee's claim. Participating to the extent necessary and practical at the negotiation and award stages will enable the intervenor at least to evaluate the employee's and employer-insurer's appraisal and then to determine whether to join with the employee in also compromising its claim or to pursue full reimbursement by a trial on the merits. It must, of course, be understood that it would be improper for the intervenor to intermeddle in the merits of the employee's case in any manner that would pressure him to risk trying a case of ques-

tionable liability. He must be free to go forward with the settlement despite the position of the intervenor. In the rare case where the intervenor refuses to agree to the settlement arrived at by the employee and employer-insurer, the basis therefor should be disclosed in the award proceedings before the approving officer to be considered in determining whether a settlement is "reasonable, fair, and in conformity with [law]." § 176.521, subd. 2.[4] If the settlement award is issued without reimbursement, the intervenor's remedy to pursue recovery by adjudication on the merits remains.

It is hoped that our holding will motivate the employer-insurer and the employee to include the intervenor in all settlement negotiations, knowing that the intervenor may be fully reimbursed if excluded. In addition, health insurers are encouraged to continue to promptly pay doubtful claims, with the assurance that they will be able to compromise and settle or receive reimbursement if the employee later recovers workers' compensation benefits, however labeled.

We therefore reverse and remand with instructions to award intervenors full reimbursement.

---

4. It is conceivable that the parties participating in the approval proceedings could agree that the approving officer determine the issue of the amount of the intervenor's reimbursement conclusively or subject to further review by the court of appeals.