Ruth PARKER/LINDBERG,
Respondent,

v.

FRIENDSHIP VILLAGE and St. Paul
Companies, Relators,

and

Aetna Life and Casualty, Intervenor,
State of Minnesota, Department of Human Services, Intervenor, Respondents.

No. C4–86–791.

Supreme Court of Minnesota.

Nov. 7, 1986.

Gary M. Hagstrom, Stephen J. Foley, Minneapolis, for relators.

Victor C. Johnson, Minneapolis, for Aetna Life and Cas.

Patricia A. Sonnenberg, Sp. Asst. Atty. Gen., St. Paul, for Dept. of Human Services.

Robert R. Johnson, Minneapolis, for amicus curiae Minnesota Trial Lawyers Assoc.

YETKA, Justice.

Employer, Friendship Village, and insurer, St. Paul Companies, are appealing from a decision of the Workers' Compensation Court of Appeals which affirmed a settlement award to an employee allegedly injured on the job and awarded two intervenors, Aetna Life and Casualty (Aetna) and Minnesota Department of Human Services (DHS), full reimbursement of their payments to the employee. The case came before the WCCA on appeal of the intervenors from a decision of a compensation judge affirming a stipulated settlement between employer/insurer and employee which failed to provide any reimbursement to intervenors. We reverse the WCCA and remand for a hearing before a compensation judge.

Employee, Ruth Parker/Lindberg, worked as a nursing assistant at Friendship Village. In December 1982 or January 1983, while performing her duties at Friendship Village, employee allegedly injured her back. Since January 1983, employee has been unable to work and has undergone numerous hospitalizations. As required by Minn.Stat. § 176.191, subd. 3 (1984), Aetna provided employee disability income and paid medical expenses despite a policy that excluded work-related injuries. Beginning in September 1983, employee received general assistance benefits through Hennepin County.

On March 13, 1984, employee filed a workers' compensation claim petition seeking temporary total disability benefits commencing January 11, 1983. Employee's claim petition was served on Aetna. On July 23, 1984, Aetna's motion to intervene in the pending action was granted.

On October 4, 1984, the employer/insurer advised Aetna that they denied that an accident happened or that the medical problems for which Aetna had paid were caused by employee's alleged injury.

On February 14, 1985, Aetna attended the deposition of the employee taken by the employer/insurer's attorney. At this time, employee and employer discussed a possible settlement, but no offer was made to Aetna.

On February 25, 1985, employee's attorney notified Hennepin County of his client's workers' compensation claim and informed employer/insurer that DHS was paying benefits to employee. Hennepin County notified DHS on March 12, 1985. At no point did attorneys for employer/insurer tell DHS that it might have an intervention interest.

On March 18, 1985, a settlement conference was held before Compensation Judge Thomas Longfellow. The conference was attended by counsel representing employee, employer and insurer, and Aetna. DHS was not aware of the meeting and did not attend. Employer and insurer offered employee $20,000 as a final and complete settlement of claims. Aetna asked employer/insurer for a settlement offer of its claims at the conference, but received none.

On March 26, 1985, employee's attorney advised Aetna that the employee and the employer/insurer had settled their claim for $20,000 plus an additional small amount contingent on increased permanent partial disability. Also, on March 26, the office of Administrative Hearings set the compensation hearing for May 14, 15, 16 and 17, 1985.

On March 28, DHS filed a motion to intervene in employee's action, serving notice on all parties. The employer/insurer objected to the intervention on the grounds, among others, that a full and final settlement having been concluded with employee, there were no funds to pay the DHS claim. However, the intervention motion was granted on May 2, 1985.

On April 2, 1985, attorney for employer/insurer phoned Aetna and offered Aetna $2,505.93, approximately 3% of the $83,552.09 claimed by Aetna for accumulated medical and disability bills.

On April 3, Aetna rejected this offer, but offered, in turn, to accept $41,776.04 or approximately 50% of its claim.

On April 8, employer/insurer made settlement offers to both DHS and Aetna. Both intervenors were offered approximately 6% of their intervention claims, i.e., $5,013.30 to Aetna and $234.17 to DHS. The employer/insurer's attorney justified this percentage by alleging that the $20,000 offered to settle the employee's claim had represented only 6% of her total future possible compensable payments under the workers' compensation act.

On April 9, employer/insurer asked both DHS and Aetna to sign a settlement stipulation. The stipulation set forth the claims of all parties, including employee, employer and insurer, and the two intervenors, and provided for the payment of $20,000 plus an unspecified amount for possible additional 5% future disability to employee. No sums were offered to intervenors. However, the stipulation stated that "the employer and insurer have attempted to negotiate and will continue to attempt to negotiate reasonable resolutions of the intervenor's [sic] claims, and that this Stipulation is in no manner intended to foreclose the intervenors from prosecuting their intervention claims."

On April 9, Aetna called employer/insurer's attorney and refused the request to sign. On April 12, 1985, Aetna wrote a letter to employer/insurer's attorney rejecting the $5,013.30 previously offered and making a counteroffer of $35,268.85, 46% of the original claim. In a letter on April 17, DHS refused to sign the stipulation and said they were ready to discuss a settlement of their claim at any time, but made no counteroffer to employer/insurer's previous offer of 6%.

On April 19, after making several minor changes in the stipulation and deleting the signature lines for intervenors, employer/insurer sent the revised document to employee's attorney and asked that the stipulated settlement be signed by him and his client and then submitted to a compensation judge for approval. Copies of the revised stipulation were provided to intervenors.

Between April 22 and May 6, employer/insurer took depositions of employee's treating physicians as well as the deposition of an independent medical examiner. Aetna participated in these depositions and also subpoenaed witnesses and medical records. DHS did not participate in either depositions or discovery nor did employee's attorney.

On May 3, the stipulation for settlement was submitted to the Office of Administrative Hearings. On May 10, counsel for Aetna advised the compensation judge by letter that Aetna was objecting to the stipulation.

On May 13, the stipulated settlement was approved by a compensation judge. Apparently, neither Aetna nor DHS nor representatives of any other party were present when the judge made her decision. However, she did have available the letters written by employer/insurer and intervenors in which the various offers and counteroffers had been made. The judge entered an award with terms as set forth in the re-

vised stipulation. Intervenors' claims for reimbursement were set for a trial over the next 2 days.

At the start of the May 14, 1985 hearing, both Aetna and DHS moved for an order awarding them full reimbursement of their interests based on the lack of good faith offers to settle during settlement negotiations. Both motions were taken under advisement.

At the beginning of the hearing, attorney for employer/insurer advised Aetna that they did not admit the judge's jurisdiction to hear Aetna's claims for medical expenses of over $80,000 and would only agree to litigate Aetna's temporary total disability claim of $2,635.90. *Jackson v. Red Owl Stores, Inc.*, 375 N.W.2d 13 (Minn.1985), had not yet been decided and the division of jurisdiction between compensation judges and the Medical Expenses Board was then uncertain.

The hearing lasted 3 days-from May 14 to May 16, 1985. Testimony was heard from employer, treating physicians, and other witnesses. Employee testified in cooperation with intervenors. Before the compensation judge issued a decision on the reimbursement motion or on the merits of employee's compensation claim, Aetna and DHS appealed the award on stipulation to the Workers' Compensation Court of Appeals. Aetna appealed on May 22 and DHS on June 5, both asking that the award be set aside or, alternatively, that full reimbursement be granted. The compensation judge delayed announcing her decision pending the appeal. On April 15, 1986, the Workers' Compensation Court of Appeals affirmed the stipulation, but also granted intervenors claims for reimbursement. This appeal followed.

Relators have raised these issues on appeal:

I. Were intervenors effectively excluded from settlement proceedings and thus guaranteed full reimbursement of their intervention interests?

II. Does automatically awarding intervenors full reimbursement violate employer/insurer's right to equal protection of the laws?

III. Did the lack of intervenors' signatures invalidate the settlement between employer/insurer and employee?

IV. Is this appeal from the hearing judges order affirming the settlement premature?

■ Because we find that this appeal is premature until a compensation judge has had a chance to rule on the issue of primary liability and whether reimbursement is proper, we decline to decide all of the issues raised and remand the case for hearing before a compensation judge for the reasons set forth below.

■ This case is on appeal from the Workers' Compensation Court of Appeals' decision to affirm the stipulation between employer and employee and to award full reimbursement to the intervenors. Ordinarily, this court reviews decisions of the WCCA by viewing the facts in the light most favorable to the decision of the WCCA and will not disturb it unless manifestly contrary to the evidence or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984). However, the WCCA's decision is based on a documentary record of court orders and legal correspondence between counsel for the various parties. Thus, all of the WCCA's decisions, not just decisions of law, can be reviewed *de novo*. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225–26, 243 N.W.2d 302, 305, *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

The WCCA's decision to grant full reimbursement to intervenors Aetna and DHS was based on the companion cases of *Brooks v. A.M.F., Inc.*, 278 N.W.2d 310 (Minn.1979), and *Hendrickson v. Central States Insulation, Inc.*, 278 N.W.2d 310 (Minn.1979). In *Brooks*, the court held that "an intervenor who is excluded from participating in negotiations resulting in a

final settlement and who is not a party to the settlement stipulation should * * * be awarded full reimbursement by the settlement award." *Id.* at 315. In both *Brooks* and *Hendrickson,* the employer/insurer involved settled with employee, had the award approved by a hearing judge, and then litigated the issue of its liability against intervenors. In *Brooks,* the intervenor was excluded from the settlement proceedings, being notified of the settlement negotiations only after the settlement award had been approved by the Workers' Compensation Division. In *Hendrickson,* employer-insurer offered the intervenor 25% of its intervention claim after the employer-insurer had concluded a separate settlement with the employee. However, the intervenor rejected the offer. The settlement award proceedings in *Hendrickson* were without a formal hearing and, apparently, the intervenor's position was not brought to the attention of the compensation judge.

The two intervenors of this case claim that *Brooks* mandates full reimbursement of their intervention claims. Both claim that they were effectively excluded from any participation in settlement negotiations between employer-insurer and employee until after those two parties had effectively settled the matter between them. Only then were intervenors presented with settlement offers, which, they claim, were so unreasonably low as to preclude settlement.

■ DHS has the stronger claim that it was excluded from settlement negotiations. DHS has been providing benefits to employee since September 1983. Counsel for employer/insurer and employee had a statutory duty to inquire whether some third party was paying benefits to the employee, including a duty to ask their clients specifically whether the injured employee was receiving third-party benefits. Minn.Stat. § 176.191, subd. 4 (1984), Minn. Rules 1415.1100 (1985). Yet, DHS was not told of the employee's workers' compensation claim until March 12, 1985, and then the information came secondhand from Henne-

pin County. Requiring time for investigation, DHS did not file an intervention claim until March 28, 1985, after the employer/insurer and employee had agreed between themselves on a settlement figure. Thus, it is more doubtful that DHS was able to participate in the negotiations to the extent necessary to "at least * * * evaluate the employee's and employer-insurer's appraisal and then to determine whether to join with the employee in also compromising its claim or to pursue full reimbursement by a trial on the merits." *Brooks,* 278 N.W.2d at 315.

Aetna, in contrast, was more closely involved with the settlement negotiations between employer/insurer and employee. Aetna attended a deposition of the employee on February 14, 1985, at which the employee and employer/insurer discussed a possible settlement of the claims. Aetna also attended a settlement conference on March 18, at which the claims of employee were again discussed, and employer/insurer made an offer of complete settlement to employee. As with DHS though, employer/insurer made a settlement offer to Aetna only after employer/insurer and employee had reached their own agreement.

Apparently, Aetna's contention is that the employer/insurer should not have been able to settle with employee first and then negotiate with intervenor. However, it is not clear that Aetna was wronged by the timing of employer/insurer's offer. The *Brooks* requirement that intervenors be allowed to participate in settlement negotiations does not necessarily mean that intervenors must participate in all settlement offers. By sitting in on depositions and settlement negotiations, Aetna had the opportunity to evaluate the strength of opposing claims—the basic goal of the participation requirement.

DHS, but not Aetna, also argues that it was prevented from participating in award proceedings before the compensation judge. *Brooks* makes clear that an intervenor cannot be excluded from award proceedings and that the basis for an intervenor's decision not to accept an employ-

er/insurer's settlement offer must be available to a compensation judge before a stipulated settlement can be approved. DHS claims it was never informed when the stipulated settlement was submitted to the compensation judge and, unlike Aetna, did not file an objection to the settlement. The only evidence before the compensation judge when approving the stipulated settlement was a list of DHS's monetary claims and a letter from DHS rejecting employer/insurer's offer of 6%. Neither document explained why DHS refused to agree to a settlement. Though Aetna's objections to the settlement also applied in part to DHS, DHS should have had the right to make its own arguments to the judge.

Finally, both intervenors also argue that the employer/insurer's settlement offers, when they finally came, were unreasonably low. Employer/insurer offered Aetna and DHS 6% of their intervention claims, claiming this was the same percentage accepted by employee in settlement of her claims.

It is difficult, if not impossible, to determine on review whether the offer of 6% was a reasonable settlement of the intervenors' claims. The employer/insurer argues forcefully that the employee's injury could not have been work related. Moreover, there is no direct evidence that, as intervenors claim, the employer/insurer exaggerated employee's possible future expenses or that the $20,000 offered employee was computed with previously paid third-party benefits in mind. On the other hand, employee's arguments in favor of liability are not available before this court, the employer/insurer's estimate of the future medical expenses—$100,000—is not verifiable, and employer/insurer was well aware of the sums paid employee by Aetna.

The WCCA decision below, relying on the facts of *Hendrickson*, would apparently hold that, so long as an intervenor is willing to accept less than full reimbursement, it may rightfully refuse any offer lower than 25%. Yet, setting up a bright line rule of what constitutes a reasonable percentage for a settlement offer does not take into account the possibility that some employees' claims for workers' compensation might be very weak. This court will not undertake the uncertainty and guesswork of trying to determine whether a particular percentage was reasonable. Instead, we leave this decision to the hearing judge. This solution is consistent with *Brooks* where the court held that, in cases where an intervenor withheld its assent to an agreement, the hearing officer would decide whether the settlement was reasonable.

■ To summarize, Aetna and DHS do not have the right to full reimbursement of their intervention claims unless they have been excluded from settlement negotiations. Though certain conclusions could be inferred from the available record, whether intervenors have been excluded from settlement negotiations is a question that is better answered by the finder of fact, namely, a compensation judge. That has not been done in this case and, thus, a remand to a compensation judge is required. We do not believe that it would be proper to set aside the settlement stipulation in this case because it has already been approved by a compensation judge, as well as the Workers' Compensation Court of Appeals, as being in the best interest of the employee.

■ Minn.Stat. § 176.521 (1984) states that "an agreement between an employee or his dependent and the employer or insurer to settle any claim * * * for compensation under this chapter is valid where it has been executed in writing and signed by the parties and intervenors in the matter * *." The settlement stipulation approved by the compensation judge was not signed by the two intervenors, Aetna and DHS, who both felt that it inadequately protected their interests. However, finding that the lack of signatures invalidates the settlement would contradict *Brooks*, which held that, in rare cases, a hearing judge could approve a settlement to which an intervenor had not agreed. Moreover, allowing intervenors the power to block any settlement which they would not sign would give them veto power over an employee's ability to settle

the claim. In this case, if this settlement stipulation were sent back for appropriate signatures, the settlement agreement between employee and employer/insurer would probably unravel while employer/insurer and intervenors argued over levels of reimbursement.

Thus, we find that is was not the legislative intent that all parties and all intervenors must execute a stipulation for settlement. Rather, only those who approved of the same need execute it. However, all parties should be given a chance to be heard before a compensation judge on the question of approval of the stipulation, and the compensation judge should set out reasons for its decision. In this case, the compensation judge approved the stipulation, but before that court could rule on the issue of primary liability or on the right to reimbursement, an appeal was taken on the issue as to whether the stipulation was properly approved to the WCCA, which ruled on the same. Allowing that appeal needlessly deprived the compensation judge of the opportunity to resolve the liability issue in favor of the intervenors, which would have obviated the need for further proceedings. Thus, we hold that appeal was premature.

Accordingly, the WCCA is reversed and the case is remanded for hearing before a compensation judge who shall:

1. First determine whether the injury was work related and compensable; that is, it must determine primary liability.

2. If primary liability is determined to exist, the compensation judge shall then determine the extent of reimbursement allowable to Aetna and DHS.

3. If primary liability is found not to exist, the compensation judge must then determine whether full reimbursement must, nevertheless, be made to Aetna and DHS because they were effectively excluded from the settlement proceedings.

4. In this case, the compensation judge shall also permit both Aetna and DHS to set out their reasons for refusing to approve the settlement stipulation, as well as the offers of reimbursement made to them, and their reasons for refusing the same. They shall also be permitted to submit evidence of all payments made by them, whether medical or disability bills. The judge shall issue findings as to why it has approved the settlement.

In all future cases, a compensation judge shall be responsible to see that all interested parties to a proposed settlement are notified of a proposed stipulation for settlement, both the parties to the settlement as well as intervenors. All parties so notified shall be given an opportunity to be heard before the compensation judge determines whether to approve or disapprove the stipulation. Those objecting to the stipulation shall state the reasons for their objections and the compensation judge shall make findings on all issues raised before it by reason of the stipulation and before making a decision thereon.

Reversed and remanded for hearing before a compensation judge for the reasons set forth above.

COYNE, J., took no part in the consideration or decision of this case.