**Thanh LE, Respondent,**

v.

**KURT MANUFACTURING and Safeco Insurance Company, Relators,**

and

**D.C.A., Inc., intervenor, Respondent.**

**No. C5–96–1675.**

Supreme Court of Minnesota.

Dec. 19, 1996.

Christine L. Tuft, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, for Employer/Insurer.

Rolly Theiler, Karney & Theiler, Minneapolis, for Employee/Respondent.

## OPINION

GARDEBRING, Justice.

In this workers' compensation matter, we consider under what circumstances an intervening health care provider, excluded from settlement negotiations between the employee and the employer/insurer, is entitled to full reimbursement of its claim. The compensation judge concluded that the employee and the employer/insurer did not negotiate the intervenor's claim in good faith and therefore, the intervenor was entitled to full reimbursement of its claim. In a split decision, the Workers Compensation Court of Appeals (WCCA) affirmed, relying upon *Brooks v. A.M.F., Inc.*, 278 N.W.2d 310 (1979). We affirm on the same basis.

On March 1, 1990, the employee, Thanh Le, an assembly line worker for Kurt Manufacturing, sustained compensable low back and neck injuries. Her doctor had trouble evaluating her condition because of a language barrier, but in response to questions about her work situation, the employee said she thought she could "continue to perform her duties and is anxious to do so." On February 4, 1994, the employee sought medical care for complaints of chronic neck and back pain dating back to at least 1988, "made worse" by the March 1990 work injury, and steadily worsening since that time. She indicated she continued to work because she was afraid of losing her job. The employee's doctor excused her from work on February 8, 1994, and D.C.A., Inc. paid disability benefits to the employee through April 24, 1994, when the employee's doctor authorized a return to work with restrictions. The employee's doctor also completed a physician's report form on which he indicated the employee's disability was the result of an aggravation of the March 1990 work injury.

In August 1994, the employee filed a claim petition, seeking wage loss benefits and alleging that her disability from February to April 1994 was a compensable consequence of her March 1990 work injury. D.C.A. filed a motion to intervene, seeking reimbursement of $2,258.07 in disability benefits paid from February to April 1994. The motion was granted and the matter scheduled for hearing in June 1995. While that was pending, in January 1995, the employee aggravated her back at work, and the employer/insurer commenced payment of benefits.

By the time the 1994 claim petition came on for hearing, the employee had added a claim for permanent partial disability benefits. On the date of hearing, the employer/insurer and the employee settled the permanent partial disability portion of the claim. No sums were offered to D.C.A., the employer/insurer taking the position that it was D.C.A.'s job to prove that the employee's claimed temporary total disability was work-related. D.C.A., however, contended that it had been effectively excluded from settlement negotiations and sought full reimbursement of its intervention interests.

After the hearing, the employer/insurer and employee submitted an executed stipulation for settlement for approval. The terms of the agreement provided that the employee would accept $2,625 (less $656.25 in attorney fees) to close out the permanent partial disability claim related to the March 1990 work injury. The agreement also provided that the employee had withdrawn all other claims alleged in her petition, including the claim for temporary total benefits, that the parties agreed the claim petition would be dismissed on approval of the settlement, that D.C.A.'s claim had not been settled, diminished or resolved, and that the employer/insurer denied D.C.A. had a claim because the employee had withdrawn everything except the permanent partial disability claim that had been settled. The compensation judge approved the settlement, issued an award on stipulation, and ordered full reimbursement to D.C.A., plus interest, finding that D.C.A. had been effectively excluded from settlement negotiations. On appeal, the WCCA affirmed.

Preliminarily, it should be remembered "that a workers' compensation claim is not like a private personal injury tort action"

in which settlements put "to rest, once and for all, a dispute between the parties * * *." *Franke v. Fabcon, Inc.,* 509 N.W.2d 373, 376 (Minn.1993). Workers' compensation is "social legislation, providing a measure of security to workers injured on the job, with the burden of that expense considered a proportionate part of the expense of production." *Id.* The Minnesota compensation system endeavors to protect the interests of all parties by requiring that settlements be fair, reasonable and in conformance with the Act and that settlements be subject to approval. Minn.Stat. § 176.521, subd. 2 (1996); *Franke,* 509 N.W.2d at 377; *Senske v. Fairmont & Waseca Canning Co.,* 232 Minn. 350, 359, 45 N.W.2d 640, 647 (1951).

■ Among the interests protected by the compensation system are those of intervenors, particularly health and disability insurers upon which Minn.Stat. § 176.191, subd. 3 imposes the obligation to make medical or disability payments whenever there is a dispute about the compensability of an injury. That statute goes on to provide that "[i]f the injury is subsequently determined to be compensable pursuant to [the Workers' Compensation Act], the workers' compensation insurer shall be ordered to reimburse the [health or disability] insurer that made the payments for all payments made under this subdivision by the [health or disability] insurer, including interest at a rate of 12 percent a year." *Id.* While a health or disability insurer has a right of reimbursement, it cannot initiate a claim on its own. It can only intervene in an existing proceeding; but once those proceedings have commenced, they must be conducted so as to protect the health or disability carrier's reimbursement rights. *Johnson v. Blue Cross & Blue Shield,* 329 N.W.2d 49, 52 (Minn.1983). As we said in *Johnson,*

> Two policy considerations emerge from the statute and the case law: First, the burden of economic loss in work-related injuries is to be put on industry, not the health [and disability] insurer; and, second, so that the injured employee does not suffer while primary liability is being disputed, health [and disability] carriers are expected to pay the bills until workers' compensation coverage is established. In return for the

health carrier's undertaking this responsibility and to minimize the administrative cost of doing so, the health [and disability] carrier is permitted to take a relatively passive role in the workers' compensation litigation. "We believe it is incongruous to place upon the intervenor [the health [or disability] carrier] the burden of proving that the injury was work related before it can recover reimbursement."

*Id.* (quoting *Brooks v. A.M.F., Inc.,* 278 N.W.2d 310, 315 (Minn.1979)).

In *Brooks,* we said that an intervenor ought to be a participant in the settlement negotiations or award proceedings so as to enable the "intervenor at least to evaluate the employee's and employer-insurer's appraisal and then to determine whether to join with the employee in also compromising its claim or to pursue full reimbursement by a trial on the merits." 278 N.W.2d at 315. We held further that "an intervenor who is excluded from participating in negotiations resulting in final settlement and who is not a party to the settlement stipulation should, on principles of equity and public policy, be awarded full reimbursement by the settlement award." *Id.*

The aim of *Brooks* was to motivate the employer/insurer to include intervenors in settlement negotiations, on pain of penalty, and to encourage health and disability insurers to continue to make prompt payment of doubtful claims, "with the assurance that they will be able to compromise and settle or receive reimbursement if the employee later recovers workers' compensation benefits, however labeled." *Id.* at 316.

Subsequently, in *Parker/Lindberg v. Friendship Village,* 395 N.W.2d 713, 719 (Minn.1986), we followed *Brooks,* adding that

> [i]n all future cases, a compensation judge shall be responsible to see that all interested parties to a proposed settlement are notified of a proposed stipulation for settlement, both the parties to the settlement as well as intervenors. All parties so notified shall be given an opportunity to be heard before the compensation judge determines whether to approve or disapprove the stipulation. Those objecting to the stipulation shall state the reasons for their objections

and the compensation judge shall make findings on all issues raised before it by reason of the stipulation and before making a decision thereon.

In this case, the employer/insurer argues that *Brooks* has no application where the parties negotiated only a partial settlement, not a full, final and complete settlement of all claims. However, we are not persuaded. Rather, we conclude that such a distinction can render a nullity the scheme by which the health and disability insurers obtain recovery. *See Repo v. Capitol Elevator Co.,* 312 Minn. 364, 368, 252 N.W.2d 248, 251 (1977). The employer/insurer also suggests that when an employee no longer has an incentive to pursue an existing claim, it is up to the disability insurer to establish that the disability on which its intervention interest is based was work-related. But as we said in *Brooks,* requiring the health or disability insurer to prove primary liability is incongruous with the coordinated statutory structure for payment and reimbursement of medical and disability benefits. Based on our past cases, it should only be the rare instance in which a hearing judge may approve a settlement to which a health or disability insurer refuses to join, thereby leaving the intervenor to pursue recovery by adjudication on the merits if it so chooses. *Parker/Lindberg,* 395 N.W.2d at 718–19; *Brooks,* 278 N.W.2d at 314–16.

While it may be that settlements such as the one made in this case are not subject to approval in the first instance, the validity of the settlement is not at issue here. What is before us is the application of *Brooks,* and on that we agree with the WCCA. To decide otherwise would seriously undermine the coordinated benefits payment and reimbursement scheme carefully crafted by the legislature. We therefore affirm the decision of the WCCA.

Affirmed.

BLATZ, J., took no part in the consideration or decision of this case.