STATE OF MINNESOTA

IN SUPREME COURT

A13-1409

Workers' Compensation Court of Appeals
Dietzen, J.
Concurring in part, dissenting in part, Page, J.

Lon F. Gamble,

        Respondent,

vs.
Filed:  August 13, 2014
Office of Appellate Courts

Twin Cities Concrete Products and
Gallagher Bassett Services, Inc.,

        Relators,

Lakeview Hospital,

        Intervenor, Respondent,

Minnesota Laborers Health & Welfare
Fund, Dr. Elmer Kasperson, Nurse
Anesthesia Services, St. Croix
Orthopaedics,

        Intervenors.

_____

David N. Larson, Sarah A. Bennett, Fitch, Johnson, Larson & Held, P.A., Minneapolis, Minnesota, for relators.

Kris A. Wittwer, Jessica A. Syverson, Kris A. Wittwer Law Firm, Roseville, Minnesota, for intervenor, respondent Lakeview Hospital.

_____

1

S Y L L A B U S

When an employer fails to give a medical provider notice of its right to intervene in a workers' compensation proceeding, the medical provider is not entitled to automatic payment of unpaid medical charges under *Brooks v. A.M.F., Inc.*, 278 N.W.2d 310 (Minn. 1979), unless the medical provider can show the lack of notice resulted in prejudice.

Reversed and remanded.

O P I N I O N

DIETZEN, Justice.

The question before us is whether we should extend our decision in *Brooks v. A.M.F., Inc.*, 278 N.W.2d 310 (Minn. 1979), and require automatic payment of a medical provider's treatment expenses when an employer fails to give the medical provider notice of its right to intervene in a workers' compensation proceeding to determine responsibility for those expenses.

The employee, Lon Gamble, was injured in a work-related accident at Twin Cities Concrete Products (Twin Cities). His doctor recommended surgery, but Twin Cities objected to the surgery on the ground that it was not reasonable and necessary. Gamble obtained approval for the surgery from the Minnesota Laborers Health & Welfare Fund (the Fund), a union-sponsored benefit plan, and proceeded with the surgery at Lakeview Hospital. A workers' compensation judge conducted a hearing and determined that the surgery was not reasonable and necessary and ordered Twin Cities to reimburse the Fund for the medical bills, but concluded that Twin Cities could itself seek reimbursement of

2

the expenses from the medical providers.  Lakeview, however, was not given notice of that hearing.  Subsequently, before a second hearing on Twin Cities' request for reimbursement, Lakeview intervened.  Following the second hearing, the compensation judge concluded again that Gamble's surgery was not reasonable and necessary and ordered the medical providers, including Lakeview, to reimburse Twin Cities.  On appeal, the Workers' Compensation Court of Appeals (WCCA) reversed, concluding that the *Brooks* automatic-reimbursement rule should be extended to Lakeview because it was not given notice of the first hearing.  We disagree and therefore reverse and remand.

The relevant facts are largely undisputed.  Gamble injured his low back when he fell six or seven feet from a ladder during the course of his employment at Twin Cities Concrete Products on May 24, 2010.  He reported the incident to Twin Cities and saw Dr. Christian DuBois for medical treatment.  An MRI conducted at Lakeview in July 2010 revealed mild to moderate disk space narrowing at L4-5 and L5-S1 with mild degenerative changes.  Gamble received epidural injections in July and September 2010, but the injections provided little relief.  Gamble then returned to Dr. DuBois, who recommended back surgery to relieve the back pain.

Gamble subsequently filed a petition for workers' compensation benefits in November 2010.  At the request of Twin Cities, Dr. David Florence conducted an independent medical examination of Gamble and concluded that surgery was not only unreasonable and unnecessary, but was "contraindicated in view of the total picture and the lack of surgical guidelines."  Thereafter, Twin Cities refused to pay for the surgery. Nevertheless, Gamble obtained pre-authorization from the Fund to proceed with the back

3

surgery, and then Dr. DuBois performed the surgery at Lakeview. Lakeview charged $67,460.25 for the back surgery, of which the Fund paid $52,809.36.

A hearing was held in June 2011 on Gamble's petition to consider, among other things, whether the back surgery was causally related to his work injury, whether the surgery was reasonable and necessary, and who was responsible for the medical expenses related to that surgery. Prior to the hearing, Gamble notified the Fund and some of the medical providers of their right to intervene in the proceeding, *see* Minn. Stat. § 176.361, subd. 1 (2012) (providing intervention rights to a "person who has an interest" in the matter), but failed to notify Lakeview of its intervention right.[1] Based on the record, including the opinions and notes of the treating physicians, the workers' compensation judge concluded that Gamble's back surgery was not reasonable and necessary, for reasons not relevant here. The judge ordered Twin Cities to reimburse the Fund for its payment of the medical expenses and authorized Twin Cities to seek reimbursement from the medical providers.

Twin Cities reimbursed the Fund and then filed a medical request seeking reimbursement from the medical providers. Lakeview filed a motion to intervene, in which it sought to obtain payment of the unpaid balance of Gamble's medical bills.[2]

---

[1] The medical providers notified were St. Croix Orthopaedics, High Pointe Surgery Center, Therapy Partner/OSI, and Stillwater Medical Group. It appears to be undisputed that the parties were aware of Lakeview's interest before the June 2011 hearing, but the hearing proceeded without Lakeview's participation.

[2] Lakeview had previously moved to intervene in the matter after it first learned in late 2011 of the June 2011 proceeding. This motion was denied because there were no

(Footnote continued on next page.)

4

Following a hearing in September 2012, the workers' compensation judge evaluated the evidence, including new evidence presented by Lakeview, and determined that the surgery was not reasonable and necessary and ordered the medical providers to reimburse Twin Cities for the medical bills it had paid to the Fund.

The WCCA reversed, concluding that the *Brooks* automatic-reimbursement rule applied, and that Lakeview was entitled to payment in full of its medical charges because it had not been given notice of its right to intervene in Gamble's proceeding. *Gamble v. Twin Cities Concrete Prods. & Gallagher Bassett Servs., Inc.*, 2013 WL 3791882, at *4-7 (Minn. WCCA July 8, 2013). The WCCA reasoned that it was undisputed that Lakeview did not receive notice of the first hearing, and therefore Lakeview was entitled to reimbursement regardless of the reasonableness and necessity of the surgery. *Id.* at *7. This certiorari appeal followed.

I.

Twin Cities argues that the *Brooks* automatic-reimbursement rule applies only in the context of settlement negotiations, and thus the WCCA erred in extending *Brooks* simply because Lakeview was not given notice of its right to intervene in Gamble's workers' compensation proceeding. Lakeview counters that the *Brooks* automatic-

(Footnote continued from previous page.)
disputes pending, but once Twin Cities requested reimbursement, Lakeview filed a second motion to intervene seeking payment of the unpaid balance, which is often referred to as the *Spaeth* balance. A *Spaeth* balance is the amount that remains after a health insurer pays the medical provider the amount provided under the workers' compensation fee schedule. *See Spaeth v. Cold Spring Granite Co.*, 56 Minn. Workers' Comp. Dec. 136 (WCCA 1996), *aff'd in part*, *rev'd in part without opinion*, 560 N.W.2d 92 (Minn. 1997).

reimbursement rule applies not only to potential intervenors that are excluded from settlement negotiations, but also to potential intervenors that are excluded from a hearing on the merits.[3]

The determination of whether to extend the holding of *Brooks* to provide automatic reimbursement to Lakeview is a question of law that we review de novo. *Troyer v. Vertlu Mgmt. Co./KOK & Lundberg Funeral Homes*, 806 N.W.2d 17, 23 (Minn. 2011). To provide context, it is useful to first examine the workers' compensation statutory framework as it relates to medical treatment for work-related injuries and the intervention rights of a medical provider that provides treatment to an injured worker.

Under the Workers' Compensation Act, an employer is responsible for furnishing medical treatment to an injured employee if two conditions are met. First, the employee must have sustained a personal injury "arising out of and in the course of employment." Minn. Stat. § 176.021, subd. 1 (2012). Second, the medical treatment must "reasonably be required . . . to cure and relieve from the effects of the injury" including treatment "necessary to physical rehabilitation." Minn. Stat. § 176.135, subd. 1(a) (2012). Unless a claim is denied for reasons permitted by statute, the employer must "pay the charge" for

---

[3]    Lakeview also contends that the workers' compensation judge erred in relying on *Chrz v. Sacred Heart Hospice*, 1990 WL 291794 (Minn. WCCA Feb. 13, 1990), to require Lakeview to reimburse Twin Cities because *Chrz* did not involve the failure to provide intervention notice. Lakeview's argument lacks merit. *Chrz* involved the reimbursement procedures when an employee is covered by a health insurer and an employer-insurer and there is a dispute about whether the employee's medical treatment was reasonable and necessary. *Id*. at *3-4. The workers' compensation judge here did not rely on *Chrz* to reject Lakeview's automatic-reimbursement argument, but instead concluded, consistent with *Chrz*, that Twin Cities was entitled to reimbursement from Lakeview for its payment of medical treatment that was not reasonable and necessary.

6

the reasonable and necessary treatment, including surgery charges. Minn. Stat. § 176.135, subds. 1a, 6 (2012). In general, therefore, an employer must pay for an employee's medical treatment that is reasonable and necessary to cure or relieve the effects of a personal injury arising out of and in the course of employment, but is not required to pay for medical treatment that is not "reasonably required for the cure or relief of the effects of a compensable injury." Minn. R. 5221.0500, subp. 1F (2013); *see also* Minn. Stat. § 176.135, subd. 1.

A medical provider that treats an injured employee has the right to intervene in the employee's workers' compensation case. *See* Minn. Stat. § 176.361, subd. 1 (2012) (stating that "[a] person who has an interest in any [workers' compensation matter] such that the person may either gain or lose by an order or decision may intervene in the proceeding"). The attorneys representing the parties in the matter must inquire from their clients whether there are medical providers that provided treatment to the employee that are entitled to notice of the right to intervene in the matter. *See* Minn. R. 1415.1100, subp. 1 (2013). If such a medical provider exists, the attorneys must promptly serve the provider with written notice of its right to petition for intervention and reimbursement. *Id.*, subp. 3 (2013).

We have not addressed the consequence of excluding a medical provider that has provided medical treatment or services to an injured employee from a hearing on the merits of the employee's claim. But we have addressed the consequence of excluding an insurer that has paid medical or disability benefits to an injured employee from settlement negotiations between the employer-insurer and the injured employee. *See Le v. Kurt*

7

*Mfg.*, 557 N.W.2d 202 (Minn. 1996); *Vetsch v. Schwan's Sales Enters.*, 283 N.W.2d 884 (Minn. 1979); *Brooks v. A.M.F., Inc.*, 278 N.W.2d 310 (Minn. 1979). In *Brooks*, we considered whether a group health insurer that had intervened in a workers' compensation matter but was then excluded from participating in settlement negotiations between the employee and the employer-insurer—which resulted in a complete settlement of the employee's workers' compensation claim—was entitled to full reimbursement of the medical expenses it had paid on behalf of the employee. 278 N.W.2d at 311. We concluded that a group health insurer who has intervened in a matter and "is excluded from participating in negotiations resulting in a final settlement and who is not a party to the settlement stipulation should, on principles of equity and public policy, be awarded full reimbursement by the settlement award." *Id.* at 315. We adopted the automatic-reimbursement rule to motivate the employer-insurer and the employee to include an intervening group health insurer in all settlement negotiations, knowing the insurer may be fully reimbursed if excluded. *Id.* at 316. Additionally, we intended to encourage health insurers to continue to make prompt payment of claims, "with the assurance that they w[ould] be able to compromise and settle or receive reimbursement if the employee later recover[ed] workers' compensation benefits." *Id.*

We applied the *Brooks* automatic-reimbursement rule in both *Vetsch* and *Le* to award reimbursements to health and disability insurers that had been excluded from negotiations between the employee and the employer-insurer that had resulted in settlement of the employee's claim. *Le*, 557 N.W.2d at 205; *Vetsch*, 283 N.W.2d at 886-87.

8

## II.

With the relevant law in mind, we turn to the question of whether we should extend the *Brooks* automatic-reimbursement rule to a medical provider that does not receive notice of a hearing to determine responsibility for its medical bill. We conclude that when an employer fails to give a medical provider notice of its right to intervene in a workers' compensation proceeding, the medical provider is not entitled to automatic payment of its medical bill under *Brooks*, unless the medical provider can show the lack of notice resulted in prejudice. Two reasons support our conclusion.

First, since *Brooks* was decided, rules have been promulgated to protect an intervenor's interest in workers' compensation proceedings. Minnesota Rule 1420.1850 (2013) provides for the resolution of claims when a stipulation for settlement does not include the agreement of all intervenors or potential intervenors. It provides in relevant part that, subject to certain time limitations, the intervenor is entitled to a hearing to

> present evidence that the intervenor was effectively excluded from meaningful settlement negotiations through lack of an offer of settlement, lack of notice of the right to intervene, or an unreasonable or bad faith offer of settlement. If the judge finds that the intervenor was effectively excluded from the proceeding or negotiations, full reimbursement to the intervenor will be ordered.

Minn. R. 1420.1850, subp. 3B.

Moreover, under Minnesota Rule 1415.1100, subpart 4 (2013), a judge may sanction a party for failing to give a potential intervenor notice of its right to intervene in a matter if that failure "materially prejudice[d] the rights and liabilities of the other parties or the potential intervenor." Minn. R. 1415.1100, subp. 4. The sanctions

9

available include, among other things, any "sanction permitted by rule, statute, or case law, as the judge deems just or appropriate under the circumstances." Minn. R. 1420.3700, subp. 1G (2013).

These post-*Brooks* intervention rules adequately protect the rights of an interested party, including a medical provider, that is not given notice of its right to intervene and participate in a hearing or settlement negotiations. At the time *Brooks* was decided, the lack of such procedures left intervenors with no remedy to protect their interest in the proceeding. *See Brooks*, 278 N.W.2d at 315 ("[T]o leave an intervenor [excluded from participating in settlement negotiations] with no remedy other than to . . . undertake the burden of proving that the injury was work related is not the type of protection which strikes a proper balance of the interests of all parties concerned."). Now, however, Minnesota Rules 1415.1100, subpart 4, and 1420.1850, subpart 3, provide consequences for excluding a potential intervenor from a workers' compensation matter. *See also* Minn. R. 1420.3700, subp. 1G (providing a number of sanctions that are available).

Second, Lakeview was not prejudiced by its absence from the June 2011 hearing. In *Brooks*, we concluded that the health insurer was prejudiced by being excluded from settlement negotiations resulting in a full settlement of the employee's claim because "it is incongruous to place upon the intervenor the burden of proving that the injury was work related before [the intervenor] can recover reimbursement." *Brooks*, 278 N.W.2d at 315. Further, we noted that the employee had no incentive to cooperate with an intervenor once the employee settled on the workers' compensation claim. *Id*.

10

The concerns expressed in *Brooks* are not present here, and there is no material prejudice to Lakeview or any other party under Minnesota Rule 1415.1100, subpart 4. In this case, Gamble established that his injury was work-related at the June 2011 hearing, and therefore the remaining issue was whether Gamble's back surgery was reasonable and necessary. It is true that the compensation judge concluded in Lakeview's absence that the back surgery was not reasonable and necessary. When Lakeview's intervenor interest was asserted, however, the compensation judge revisited the issue de novo at a second hearing. Lakeview relied upon the evidence presented at the June 2011 hearing and presented new testimony from Gamble and a new report from Dr. DuBois. We conclude that the procedures employed by the workers' compensation judge ensured that Lakeview's interests were protected and not materially prejudiced.[4]

For the foregoing reasons, we decline to extend *Brooks*, and we conclude that Lakeview is not entitled to automatic payment of its medical bill for treatment of Gamble.[5]

---

[4] Although a second proceeding to determine the reasonableness and necessity of the surgery before the same workers' compensation judge was not completely satisfactory from the perspective of Lakeview, and perhaps understandably so, we cannot say on this record that the proceeding was unfair or resulted in prejudice.

[5] At oral argument, Lakeview indicated that if we reverse the WCCA, it may seek reimbursement from Gamble. The issue of whether Lakeview is entitled to obtain reimbursement from Gamble is not before us, and we decline to reach it. *See Meyer v. Nwokedi*, 777 N.W.2d 218, 223 n.5, 224 n.6 (Minn. 2010) (declining to address issues not before the court). We observe, however, that Minn. Stat. § 176.136, subd. 2 (2012), provides that a medical provider may not collect or attempt to collect payment from an injured employee for treatment that is not reasonable and necessary, unless the

(Footnote continued on next page.)

11

## III.

Having concluded that Lakeview is not entitled to automatic payment of its medical bill, we must remand the case to the WCCA to decide whether the workers' compensation judge's conclusion that the surgery was not reasonable and necessary is supported by the record.[6] Lakeview raised this issue before the WCCA, but the WCCA did not reach it because it concluded Lakeview was entitled to automatic reimbursement. *Gamble*, 2013 WL 3791882, at *7, n.4. A remand is therefore necessary. *See* Minn. Stat. § 176.481 (2012) ("Where necessary the Supreme Court may remand the cause to the [WCCA] for a new hearing or for further proceedings with such directions as the court deems proper."); *Middleton v. Nw. Airlines*, 600 N.W.2d 707, 711 (Minn. 1999) (remanding case to the WCCA when issue of legal causation was raised before the WCCA but not reached by it).

Reversed and remanded.

---

(Footnote continued from previous page.)
commissioner, the workers' compensation judge, or the WCCA determines otherwise. *See also* Minn. R. 5221.0500, subp. 1F.

[6]  The concurrence and dissent contends that Lakeview is not obligated to reimburse Twin Cities, presumably because the Fund authorized Gamble's surgery and therefore the Fund, and not Lakeview, should ultimately be responsible for Gamble's medical expenses. That issue is not before us, and therefore we decline to reach it.

# CONCURRENCE & DISSENT

PAGE, Justice (concurring in part, dissenting in part).

Although I do not disagree with the court's conclusion that respondent Lakeview is not entitled to automatic reimbursement of its treatment expenses, I nonetheless dissent from that part of the court's opinion that suggests that Lakeview may have some obligation to reimburse relator Twin Cities. I do so because, on the record presented here, it is not clear to me that Lakeview has any such obligation.