**RESEARCH MEDICAL CENTER, Respondent,**

v.

**Alex SAFIR, Appellant.**

**Alex SAFIR, Appellant,**

v.

**RESEARCH MEDICAL CENTER, Respondent.**

**CALIFORNIA–WESTERN STATES LIFE INSURANCE COMPANY, Respondent,**

v.

**Alex SAFIR, Appellant.**

**No. WD 31535.**

Missouri Court of Appeals, Western District.

May 4, 1981.

**554**

Bernard Eveloff, Kansas City, for appellant.

Russell S. Jones, Kansas City, for respondent-Research Medical Center.

John W. Cowden, Kansas City, for respondent, California-Western States Life Ins. Co.; Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, of counsel.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

PRITCHARD, Presiding Judge.

This action was begun by appellant in the Magistrate Court against Research Medical Center wherein he asked for judgment for payments made by California-Western States Life Insurance Company to Research under a policy issued to appellant, Safir. Hospital bills were incurred on behalf of appellant's wife, who is now deceased. Appellant recovered judgment against Research for $1,555.60, and Research appealed to the Circuit Court, thereafter filing a petition for interpleader, asking the court to determine whether Safir or California-Western was entitled to $1,569.02 held by Research. Then California-Western filed a declaratory judgment action asking the court to determine the effect of certain provisions of its excess medical expense benefits insurance policy issued to Safir. These three actions were consolidated and proceeded to judgment, which was for $1,409.02 in favor of California-Western, and $150.00 to Research as its attorney fees in the interpleader action. Appellant Safir then filed this appeal.

Most of the medical expenses of Safir's wife were paid by Medicare. The issue is whether payment for Medicare benefits comes within California-Western's "Limitations and Exclusions" provision in its policy: "The benefits hereunder do not cover any expense of a Covered Person that results from: * * * hospital confinement, medical or surgical services, or other treatment, * * (c) if furnished under any circumstances where no charge is made to the insured;" or under another provision of the excess medical expense policy defining the "deductible amount" as: "[T]he amount of Covered Charges which the Insured must incur before benefits are payable under this benefit. It is the amount shown in the Application or the amount paid or payable under the Basic Medical Expense Benefits of the Group Policy, if any, or any other hospital, surgical and medical reimbursement insurance or service * * *."

The Excess Medical Expense policy was a group plan issued to the agents of the Kansas City Life Insurance Company of whom appellant, Safir, was one. The policy provided for a maximum amount payable of $100,000, and $300.00 deductible, effective January 1, 1976.

Appellant first contends that he was "charged" for the benefits paid on his behalf by Medicare. He relies upon *Black v. American Bankers Insurance Company*, 478 S.W.2d 434 (Tex.1972), which indeed held that the plaintiff Black had incurred the primary hospital charges which were, in fact, paid by Medicare. The Texas Su-

preme Court came to that conclusion by a construction of § 1866 of the Medicare Act (42 U.S.C.A. § 1395cc, and subsequent sections) finding that a "Medicare patient must originally incur the hospital expenses and a legal obligation to pay them before the Social Security Administration can pay any portion thereof to the hospital 'on his behalf', * * *." It was also held that the payment is regarded under the Medicare Act as a payment to the individual who is furnished the services by the hospital. Holding to the same effect, see the case of *Niles v. American Bankers Insurance Company*, 229 So.2d 435 (La.App.1969). At 478 S.W.2d page 438 of the Black case, the Texas court remarks that Texas and Louisiana cases are better reasoned than those from other jurisdictions, but this court does not accord with that remark, but chooses to follow, and must follow, lest there be a conflict, the there footnoted case of *Steffen v. Pacific Mutual Insurance Company*, 442 S.W.2d 142 (Mo.App.1969). There the issue was whether defendant insurer was obligated to pay for hospital charges for services rendered to decedent which were paid to the hospital under the Medicare program. The policy, among other exclusions, had a provision similar to the "Limitations and Exclusions" present in the instant policy. The Steffen policy had a provision that no benefits should be payable "with respect to a hospital confinement or any surgical, medical, or other treatment for which no charge is made that the Employee is required to pay." There was in evidence the agreement between the providing hospital and the government in accordance with 42 U.S.C.A. § 1395cc the provisions of which must have been applicable to Research. That section requires the provider of services not to charge an individual for items of services to which he is entitled to have payment made under the title, and to make adequate provision for the return of moneys incorrectly collected from an individual. Notwithstanding the Black court's construction of 42 U.S.C.A., § 1395d, § 1395y, and 1395gg, that the individual is entitled to have payment made for expenses incurred for which the individual furnished the items

or services has no legal obligation to pay, and payment shall be regarded as payment to the individual, the Steffen court found that the plaintiff could not have been compelled to pay the hospital for its services rendered in view of the agreement which was in accord with 42 U.S.C.A., § 1395cc, of which the decedent (Paul B. Steffen) was a third party beneficiary. Thus, neither he nor his personal representatives could be required to pay for the services. Here, it must be concluded that appellant was not charged for $1,569.02 held by Research— that amount was paid by Medicare on appellant's behalf. For other cases holding similarly to the Steffen case, see *United States v. St. Paul Mercury Indemnity Co.*, 238 F.2d 594 (CA 8th 1956), where the insurer issued a poliomyelitis policy to a veteran who was admitted to a VA hospital as a free patient under 38 U.S.C.A., § 706. He assigned his rights to VA under the policy, and VA submitted bills to the insurer for periodic care and treatment. The insurer's defense to payment was upheld on the ground that there were no expenses "actually incurred" by the veteran, and he was under no obligation to pay for the care, hence the policy exclusion applied. See also the case involving a charity patient wherein the court held that since the insured incurred no obligation to pay the hospital, the insurer was not liable. *Protective Industrial Insurance Company of Alabama v. Gray*, 40 Ala.App. 578, 118 So.2d 289 (1960). *Jones v. Aetna Casualty & Surety Company*, 497 S.W.2d 809 (Mo.App.1973), does not aid appellant, for there it was held merely that medicare payments were not contractual insurance provisions to make applicable the exclusion provisions in the policy provisions therein involved. Here, the policy provides only for the payment of excess hospital charges over and above those for which payment is otherwise provided.

What is obvious here is that the policy in question is one for payment of excess charges over and above other provisions for the payment of medical and hospitalization expenses. For instance, if medicare payments for a spell of illness should be ex-

hausted, then respondent's insurance coverage would supply the deficit up to the limits of its policy. Appellant claims also that he is entitled to payment from respondent for $10,670.78 medical bills on account of his wife's medical and hospital care. [This claim, although not pleaded, has apparently been treated as an issue by the parties.] That amount was paid for by Medicare, so there is no excess amount charged or incurred for which respondent California-Western would be liable under its policy. The exclusion and deductible provisions above set forth are not exactly clear as to their application, but as has been observed by this writer and other persons engaged in the profession of law, these policy provisions were written just bad enough to cause a lawsuit and just well enough to stand up. Perhaps the insurance industry might do better.

The judgment is affirmed.

All concur.