**Andrew SIMPSON, Plaintiff/Appellant,**

v.

**NATIONAL CASUALTY CO., Defendant–Counterclaimant/Respondent.**

No. 61832.

Missouri Court of Appeals, Eastern District, Division One.

March 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 13, 1993.

Application to Transfer Denied May 25, 1993.

---

Timothy R. Anderson, Clooney and Anderson, St. Louis, for appellant.

Thomas B. Weaver, Douglas R. Sprong, Armstrong, Teasdale, Schlafly and Davis, St. Louis, for respondent.

AHRENS, Presiding Judge.

In this declaratory judgment action, plaintiff Andrew Simpson appeals from the trial court's judgment in favor of defendant National Casualty Company (National) on both plaintiff's petition and National's counterclaim. We affirm in part, reverse in part, and remand.

In August 1981, National issued three insurance policies to plaintiff; two are in issue: an Individual Hospital Policy, and an Individual Major Hospital and Surgical Expense Policy. National renewed those policies each year until October 1986. On October 21, 1986, National issued to plaintiff a Major Medical Policy (Conversion Policy) incorporating into one agreement the coverage provided under the three existing policies. Plaintiff paid premiums to renew the policy each January beginning in 1987.

On December 14, 1988, the Social Security Administration awarded plaintiff Medicare Part A hospital insurance benefits retroactive to December 1984.

Plaintiff paid, and National accepted, the premium to renew plaintiff's policy for the period January 21, 1989, to January 21, 1990. In the subsequent months of 1989 and 1990, plaintiff was hospitalized. Plaintiff submitted proof of claim forms to National; he did not, however, complete the space on those forms to indicate "Date Eligible for Medicare."

In August 1989, National became aware of plaintiff's Medicare eligibility when a hospital refunded National's payment on plaintiff's account, due to Medicare's payment on that account. In a letter dated October 2, 1989, National informed plaintiff the company would not renew his policy on January 21, 1990. National also refused to pay those claims plaintiff submitted which Medicare covered. In a letter dated February 13, 1990, National informed plaintiff that his policy had "been non-renewed retroactive to 1984," and that National was "negotiating with Medicare regarding all claims paid since 1984."

Plaintiff filed this two count action. Under count one, plaintiff sought a declaratory judgment that National is required to pay plaintiff under the Conversion Policy "for costs and expenses incurred by or charged to [p]laintiff relating to his stay and treatment and care received" at hospitals in 1989 and in January and February 1990. Plaintiff also sought a judgment declaring "a sum certain which [National] was and is responsible to pay [p]laintiff under the said policy[,] including the expenses incurred" at a hospital in January and February 1990. Plaintiff sought interest on that amount, together with attorney's fees and costs. Under count two, plaintiff sought damages for National's alleged vexatious refusal to pay the amounts sought under count I.

National filed a counterclaim seeking $78,787.90 which, it alleged, "represents the amount paid by [National] on claims made by plaintiff since he became eligible for Medicare from June 14, 1985 through August 28, 1988." The evidence showed that since December 1984, National paid plaintiff $78,787.90 in benefits for expenses related to plaintiff's medical care and treatment, consisting of $56,228.32 paid under the Conversion Policy, $4,400.00 paid under the Individual Hospital Policy, and $18,159.58 paid under the Individual Major Hospital and Surgical Expense Policy.

The trial court entered judgment against plaintiff on his claim and on National's counterclaim. In its order, the trial court found that the language in the insurance policies which were in effect from December 1984 to December 1989, "relieve the defendant of any obligation to reimburse plaintiff for expenses of medical care and treatment during the period, since plaintiff has been found to be eligible for Medicare retroactive to December 1984." The trial court further found National was entitled to recover $78,739.59 from plaintiff for payments made "to plaintiff for claims covered by Medicare...."

### Point I.

■ In the first of his two points, plaintiff asserts the trial court erred in entering judgment in favor of National on plaintiff's cause of action, "in that as a matter of law the court misconstrued or misinterpreted the obligations of [National] to [plaintiff] under the provisions of [the Conversion Policy] of insurance and denied [plaintiff] his legal right to obtain benefits under the policy" in 1989 and 1990.

*Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) governs our review of this court-tried case. The judgment must be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." Further, "[i]t is a fundamental rule of construction that words used in a contract are to be understood in their ordinary meaning, unless a different meaning is indicated by the context of the instrument or by the circumstances of the case." *Steffen v. Pacific Mut. Life Ins. Co.*, 442 S.W.2d 142, 145 (Mo.App.1969).

National argues that the trial court properly ruled plaintiff is not entitled to payment of expenses covered by Medicare, because the Conversion Policy terms provide only for payment of "Eligible Expenses." The policy refers to "Eligible Expenses" as "Charges Incurred" and "Fees charged." National asserts that under Missouri law and the law applicable to Medicare, plaintiff was not charged for any services or expenses covered by Medicare. National further argues the policy by its terms states its purpose is to provide benefits for "loss" and plaintiff has not suffered a loss. In support of this assertion, National relies on *Research Medical Center v. Safir*, 616 S.W.2d 553 (Mo.App.1981), and *Steffen*, 442 S.W.2d 142.

In *Steffen*, the insured under a "Medical Expense Insurance Policy" became Medicare eligible while he was hospitalized. *Id.* at 143–44. The insurance policy in question provided: " 'Nothing in the group policy shall be construed to mean that any benefits which are contingent on charges made to the Employee shall be payable by the Insurance Company ... with respect to a hospital confinement or any surgical,

medical, or other treatment for which no charge is made that the Employee is required to pay.' " *Id.* at 143. From that language, the *Steffen* court concluded, "it was the intent of the parties that the contract of insurance was meant to indemnify the insured against obligations they were by law compelled to pay, and unless such a charge is made there can be no liability under the policy." The *Steffen* court concluded the insurance company was not liable under the policy for services rendered the insured and paid for by Medicare, because neither the insured or "his personal representative could be required to pay said services." *Id.* at 145.

In *Research Medical,* the policy excluded from benefits those expenses " 'furnished under any circumstances where no charge is made to the insured.' " *Research Medical,* 616 S.W.2d at 554. Further, the *Research Medical* court noted that the policy defined the term "deductible amount" as " 'The amount of Covered Charges which the Insured must incur before benefits are payable under this benefit....' " *Id.* From the policy language, the *Research Medical* court concluded, "What is obvious here is that the policy in question is one for payment of excess charges over and above other provisions for the payment of medical and hospitalization expenses." *Id.* at 555. Accordingly, the court concluded that because Medicare paid the insured's medical bills, there was no excess amount charged or incurred for which the insurance company would be liable under the policy. *Id.* at 556.

Plaintiff argues the insurance policies discussed in *Research Medical* and *Steffen* contained specific provisions which excluded payment of benefits for treatment received for which no charge was made that the insured was required to pay. Here the Conversion Policy does not contain such specific provisions. However, the Conversion Policy does contain similar explicit language in Section V Benefits which requires the insured to pay the deductible amount and a copayment on certain expenses: "You must pay the 20% of Type B expenses listed in Section VII which we do not pay, plus the amount of Eligible Ex-

penses necessary to satisfy the Deductible Amount." Further, the Conversion Policy's provisions regarding the "deductible" are similar to the definition of "deductible amount" in *Research Medical.* In addition, the Conversion Policy specifically states in the third paragraph of its introduction: "The purpose of the policy is to provide benefits for loss due to Injury or Sickness." Although the policy could have been more clearly drafted, we find these provisions sufficiently clear to exclude from Eligible Expenses services and expenses covered by Medicare.

Other provisions support an interpretation of the Conversion Policy that dual coverage and dual benefits for services and expenses covered by Medicare were not contemplated by the parties:

**Renewable To Age 65 Or Your Entitlement to Medicare, If Earlier, Subject to the Company's Right, As Limited Herein, to Refuse Renewal**

... We can refuse to renew this policy on any Renewal Premium Due Date for any of the following conditions:

> 2. A Covered Person has or obtains other insurance which pays for the same type of medical expenses as this policy.

\*     \*     \*     \*     \*     \*

**Section II Eligibility for Coverage**

**At the Time of Issue**—These persons may become Covered Persons ... The person must not be eligible for Medicare coverage or for any like plan with the same purpose.

\*     \*     \*     \*     \*     \*

**Section III Termination of Coverage**

... In general, coverage ends on the first premium due date on or next following the event that causes termination.

\*     \*     \*     \*     \*     \*

**Rules for All Covered Persons**—Coverage will end:

3. if the Covered Person becomes entitled to coverage under Medicare.

\*     \*     \*     \*     \*     \*

**Rules for Adult Covered Persons—** ...
If you ... become entitled to coverage under Medicare [and] ... if your spouse is not a Covered Person at this time, coverage will end for all Covered Persons—however see Section IV, Conversion Privilege.

\*   \*   \*   \*   \*   \*

**Section IV Conversion Privilege**
**Who May Convert?—**

4. A person who has become entitled to coverage under Medicare.

\*   \*   \*   \*   \*   \*

A reasonable construction of these provisions is that Medicare eligibility terminates coverage, subject only to the right to obtain supplemental coverage.

■ Plaintiff contends, "When National accepted [plaintiff's] premium payment in January 1989 and thereafter made no attempt to return" the premium, National became bound to pay benefits due plaintiff for medical services and supplies, "notwithstanding the provision of the policy calling for termination of coverage...." Plaintiff's argument is based upon policy language in Section III: if National accepts "a premium for a time period after coverage is to cease, then coverage will continue to the end of the term for which the premium was paid." The evidence supports the trial court's findings that: in late September or early October, 1988, plaintiff was notified that he was entitled to Social Security disability insurance benefits; by letter dated December 14, 1988, the Social Security Administration notified plaintiff that he was entitled to hospital insurance under Medicare beginning December 1984; National became aware of plaintiff's Medicare coverage on or about August 7, 1989, when a portion of a payment made to Jewish Hospital on behalf of plaintiff was returned by the hospital as an overpayment due to Medicare payment; and between October, 1988 and June, 1989, plaintiff submitted

proof of claim forms to National and did not answer the question asking his eligibility for Medicare. It should be noted, however, that at the time plaintiff submitted those proof of claim forms after he was notified of his Medicare eligibility, National had accepted his premium payment for the 1989–1990 policy year.

In light of those facts and the policy language in Section III, National was not entitled to retroactively non-renew the Conversion Policy. Accordingly, the Conversion Policy remained in effect through January 21, 1990. As discussed, however, National was not obligated to pay as Eligible Expenses those services and expenses covered by Medicare. The trial court's conclusion of law relieved National of *"any"* obligation to reimburse plaintiff for expenses of medical care and treatment" from December 1984 to December 1989. (Emphasis added). There was evidence that portions of plaintiff's medical bills might not be covered by Medicare.[1] As such, we find the trial court misapplied the law in interpreting the policy so broadly as to leave plaintiff with no coverage for those items which are not covered by Medicare, but which would otherwise be covered under the Conversion Policy.

■ The trial court should have declared the Conversion Policy in effect through January 21, 1990. The trial court should have also declared National is obligated to pay benefits according to the terms of the Conversion Policy on items not covered by Medicare, but otherwise covered under the policy, and subject to all exclusions, deductibles, and copayments.

■ We remand for the purpose of entering such declaratory judgment. This, in effect, will provide plaintiff with a form of supplemental insurance contemplated in the insurance contract between the parties. The Conversion Policy specifically permits an insured to "convert" the Conversion Pol-

---

1. A patient billing manager employed at Jewish Hospital testified it was possible a portion of plaintiff's bill was not covered by Medicare. Further, a December 14, 1988, letter from the Social Security Administration, advised plaintiff that: "If you received any services covered by

Medicare during the period before October 1, 1986, hospital benefits for such services can be paid only if the provider which furnished the services submits a claim for payment on or before June 30, 1988."

icy to a new supplemental policy when the insured becomes entitled to Medicare coverage. Therefore, on remand, plaintiff may elect to "convert" the Conversion Policy to a new supplemental policy retroactive to October 1986 at the premium rate he would have been charged on that date and all subsequent premium due dates. If plaintiff elects to convert the policy, the trial court will give credit to the appropriate party if the premiums on the new supplemental policy are higher or lower than those plaintiff has paid to maintain the Conversion Policy; and National's liability will be in accordance with the terms of the supplemental policy. If plaintiff elects to not convert to a new supplemental policy, the Conversion Policy will be deemed to have been in effect from October 1986 to January 21, 1990, and National's liability will be limited to payment of benefits according to the terms of the Conversion Policy on items not covered by Medicare, but otherwise covered under the policy, and subject to all exclusions, deductibles, and copayments.

### Point II.

In his second point, plaintiff asserts the trial court erred in entering judgment in favor of National on its counterclaim for restitution. Plaintiff contends that "as a matter of law under the terms and provisions of [the] policy[,] [plaintiff] had no duty or obligation to return any amounts previously received in accordance with the terms and provisions of said policy." National asserts the policy language does not preclude it from seeking recovery of benefits paid under the policy for charges which are retroactively found to be covered by Medicare.

"The general rule applied in cases of mistaken payment is that restitution will be granted when a mistaken payment is made under mistake of fact, but not when the payment is made under mistake of law." *Missouri Ins. Guar. Ass'n v. Wal-Mart,* 811 S.W.2d 28, 34 (Mo.App.1991). "Restitution will not be granted to remedy a mistake of fact if the payee has so changed its position that it would be unjust to require restitution." *Id.*

Because National seeks restitution for amounts paid since December 1984, we must determine National's liability, if any, under its insurance policies issued to plaintiff prior to the issuance of the Conversion Policy.

### A. *The Individual Major Hospital and Surgical Expense Policy*

■ The Individual Major Hospital and Surgical Expense Policy was in effect from August 1981 to October 1986. We find the provisions in that policy are also sufficiently clear to exclude from "Covered Expenses" those services and expenses covered by Medicare. There are no provisions in the Individual Major Hospital and Surgical Expense Policy regarding continuation of coverage when National accepts a premium for a time period after coverage is to cease. That policy does, however, provide that upon termination of insurance due to Medicare eligibility, the insured is "entitled to have issued" a "converted policy" providing reduced benefits. Accordingly, on remand, plaintiff will be entitled to the benefits provided under such "converted policy" from December 1984 to October 1986. Again, the trial court will give credit to the appropriate party if the premiums National would have charged for such "converted policy" are higher or lower than those plaintiff paid during that time period for the Individual Major Hospital and Surgical Expense Policy.

### B. *Individual Hospital Policy*

■ The Individual Hospital Policy was also in effect from August 1981 to October 1986. That policy does not provide for termination when the insured becomes Medicare eligible. Further, the basic benefits under that policy are "payable in addition to and without regard to the amount of any other insurance [the insured] may have with this Company or with any other insurer." Therefore, we hold that dual benefits and dual coverage were contemplated under the basic Individual Hospital Policy and plaintiff is entitled to policy benefits with-

out regard to whether the expenses were also covered by Medicare.

 A Miscellaneous Expense Benefit Rider is attached to that policy. The rider specifically provides that no benefit is payable under the rider "on or after the policy anniversary occurring on or next following the date the insured" attains Medicare eligibility. Accordingly, plaintiff is not entitled to payment of benefits for expenses under the rider which were incurred on or after the policy anniversary following his December 1984 eligibility. The rider was made subject to all provisions of the Individual Hospital Policy which are "not inconsistent with the terms of this rider." Therefore, plaintiff is entitled to coverage for those expenses covered by the rider which were incurred prior to the policy anniversary following his December 1984 Medicare eligibility, without regard to whether those expenses were also covered by Medicare.

 In light of our interpretation of National's obligations under the various policies, we hold National paid plaintiff pursuant to the mistaken fact that plaintiff was not eligible for Medicare benefits. Plaintiff presented no evidence to establish he "so changed [his] position that it would be unjust to require restitution." *See id.* Therefore, the trial court did not err in concluding National is entitled to restitution.

 Determination of the amount plaintiff must pay National, however, will require an accounting in accordance with our interpretation of National's liability under the various policies. The record on appeal does not permit us to perform such an accounting. Therefore, the trial court is directed to perform such accounting on remand. The trial court may permit the parties to supplement the record with evidence relevant to such accounting.

 In his brief, plaintiff requests that we remand the case for "further determination as to whether [National] vexatiously refused to pay benefits in 1989 and 1990." We hold that the complexity of the issues involved in determining the extent of plaintiff's coverage precludes a finding that National acted vexatiously. *See Anderson v. Life & Casualty Ins. Co.*, 123 S.W.2d 207, 212 (Mo.App.1939).

The trial court's judgment is affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this opinion.

REINHARD and CRIST, JJ., concur.

